MOBIL OIL CORPORATION, Plaintiff,

v.

ADVANCED ENVIRONMENTAL RECYCLING TECHNOLOGIES, INC., Defendant.

ADVANCED ENVIRONMENTAL RECYCLING TECHNOLOGIES, INC., Counterclaim Plaintiff,

v.

MOBIL OIL CORPORATION, Mobil Corporation, Mobil Chemical Company, Inc., Arthur C. Ferguson, Andrew U. Ferrari and Paul M. Herbst, Counterclaim Defendants.

Civ. A. No. 92–351–JJF.

United States District Court, D. Delaware.

Sept. 28, 1993.

Charles S. Crompton, Jr., and William J. Marsden, Jr., of Potter Anderson & Corroon, Wilmington, DE, Richard E. Kurtz, and Albert T. Keyack, of Woodcock Washburn Kurtz Mackiewicz & Norris, Philadelphia, PA, James F. Rill, John B. Williams, and Christopher J. MacAvoy, of Collier Shannon Rill & Scott, Washington, DC, for Mobil Oil Corp., Mobil Corp., Mobil Chemical Co., Inc., Arthur C. Ferguson, Andrew U. Ferrari, and Paul M. Herbst.

Douglas E. Whitney, Jack B. Blumenfeld, R. Judson Scaggs, Jr., and Michael L. Vild, of Morris Nichols Arsht & Tunnell, Wilmington, DE, for Advanced Environmental Recycling Technologies, Inc.

FARNAN, District Judge.

## I. INTRODUCTION

Presently before the Court are three Motions to Dismiss filed by Counterclaim Defendants, Andrew U. Ferrari (D.I. 87), Arthur C. Ferguson (D.I. 84), and Paul M. Herbst (D.I. 90). The Counterclaim Defendants seek dismissal of Advanced Environmental Recycling Technologies, Inc.'s ("AERT") counterclaims against them pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure on the grounds that the Court lacks personal jurisdiction over them. Because the Court finds that it lacks personal jurisdiction over Mr. Ferrari the Court will grant his Motion to Dismiss and will dismiss AERT's counterclaims against him. However, the Court finds that it does have personal juris-diction over Mr. Herbst and Mr. Ferguson. Accordingly, the Court will deny their Motions to Dismiss.

## II. PROCEDURAL BACKGROUND

On June 9, 1992, Mobil filed this declaratory judgment action against AERT seeking a determination that it has not infringed four patents owned by AERT, and the four patents are invalid and unenforceable. (D.I. 1). Mobil amended its Complaint on August 28, 1992 seeking a declaratory judgment that Mobil has not breached a confidential relationship between AERT and Mobil. (D.I. 17).

On December 8, 1992, AERT filed its Answer to Mobil's First Amended Complaint together with four counterclaims naming as defendants Mobil Oil Corporation, Mobil Corporation, Mobil Chemical Company, Inc., and three individuals, Mr. Ferguson, Mr. Ferrari, and Mr. Herbst. Answer and Counterclaims (D.I. 67). The Counterclaims allege that the counterclaim defendants: (1) violated of Section 1 of the Sherman Act (D.I. 67 at ¶¶ 36–41), (2) violated of Section 2 of the Sherman Act (D.I. at ¶¶ 42–46), (3) breached of a confidential relationship (D.I. 67 ¶¶ 47–52), and (4) engaged in unfair competition (D.I. 67 at ¶¶ 53–56). Central to the present motions to dismiss is AERT's allegation that the counterclaim defendants violated federal anti-trust laws by filing this declaratory judgment as part of its attempt to monopolize the composite products market and it therefore constitutes "sham litigation."

Ferguson, Ferrari and Herbst each filed a Motion to Dismiss on January 7, 1993, arguing that the Court does not have personal jurisdiction over them because (1) all of their actions relating to AERT's complaint were taken as corporate representatives and the fiduciary shield precludes the Court from exercising jurisdiction over them under Delaware's long-arm statute; and (2) exercising personal jurisdiction over them would violate the minimum contacts standard of *International Shoe.*

## III. FACTS

AERT alleges the following facts in support of its counterclaims, which the Court

includes for the purpose of providing context for the present motion. (D.I. 67 at ¶¶ 2–35). Mr. Ferguson was during the relevant time period the executive responsible for Mobil's composite product business and authorized the filing of the Complaint on behalf of Mobil. Mr. Ferrari reported to Mr. Ferguson as Mobil's venture manager. Mr. Herbst, during the relevant time period, was the attorney responsible for the legal affairs of Mobil's composite products business and authorized the filing of the Complaint on behalf of Mobil. AERT is a small, publicly traded company that makes and sells composite products from recycled plastic and wood fiber. AERT owns U.S. patents 5,082,605, 5,088,910, 5,096,046, and 5,096,406 which cover methods and equipment used by AERT in making composite products.

On October 2, 1989, March 6, 1990, and May 14, 1991, representatives of Mobil, including Mr. Ferrari, visited AERT's facility in Junction, Texas. Mobil was interested in AERT's plastic film reclamation and cleansing business. The Mobil representatives signed a confidentiality agreement and then toured the facility. During the visit on May 14, 1991, the Mobil representatives assured AERT that Mobil was interested in AERT only as a potential supplier of film reclamation and cleansing services and was not interested in entering the composite products business.

In April, 1992, Mobil acquired the assets of Rivenite, a company that is involved in the composite products business. Shortly thereafter, Mobil filed this declaratory judgment action seeking a determination that Rivenite's process does not infringe AERT's patents, and that AERT's patents are invalid and unenforceable. AERT then counterclaimed challenging Mobil's purchase of Rivenite and Mobil's declaratory judgment suit as attempts to monopolize the composite products market. In addition, AERT alleged that Mobil breached the confidentiality agreement by using trade secrets it acquired from AERT during Mobil's tour of AERT's facility.

## IV. DISCUSSION

The sole issue raised by the individual counterclaim defendants' motions is whether AERT has established that the counterclaim defendants had sufficient contact with the state of Delaware to permit the Court to properly exercise personal jurisdiction over them. Rule 4(e) of the Federal Rules of Civil Procedure provides that a federal court may exercise personal jurisdiction over a nonresident "to the extent permissible under the law of the state where the district court sits." *Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 698 (3d Cir.1990). In this regard, the Court must first determine whether in personam jurisdiction exists over Ferrari, Ferguson and Herbst under Delaware's long arm statute. The Court must then ascertain whether the exercise of such jurisdiction would comport with the Due Process Clause of the United States Constitution under the standards announced in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny. *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir.1984).

■ Once a defendant properly raises the jurisdictional defense, the Plaintiff has the burden of establishing by a preponderance of the evidence that minimum contacts have occurred. *Patterson v. F.B.I.*, 893 F.2d 595, 604 (3d Cir.), *cert. denied*, 498 U.S. 812, 111 S.Ct. 48, 112 L.Ed.2d 24 (1990). AERT "must sustain its burden of proof ... through sworn affidavits or other competent evidence." *Time Share Vacation Club*, 735 F.2d at 67 n. 9 (citing *International Ass'n of Machinists & Aerospace Workers v. Northwest Airlines, Inc.*, 673 F.2d 700 (3d Cir. 1982)); *Stranahan Gear Co. v. NL Indus., Inc.*, 800 F.2d 53, 58 (3d Cir.1986) (plaintiff must show sufficient evidence to withstand a defendant's Rule 12(b)(2) motion, bare pleadings and allegations are not enough).

### A. FIDUCIARY SHIELD DOCTRINE

■ The fiduciary shield doctrine is a judicially created doctrine that immunizes acts performed by an individual in the individual's capacity as a corporate employee from serving as the foundation for the exercise of personal jurisdiction over that individual. *Rollins v. Ellwood*, 141 Ill.2d 244, 152 Ill.Dec. 384, 565 N.E.2d 1302 (1990); *see*

*generally,* Note, The Fiduciary Shield Doctrine: Minimum Contacts in a Special Context, 65 B.U.L.Rev. 967 (1985). The three individual counterclaim defendants argue that the fiduciary shield doctrine immunizes them from personal jurisdiction in Delaware because their only contacts with Delaware involved acts that they performed in their capacities as representatives of Mobil. Thus, before determining whether the individual counterclaim defendants have minimum contacts with Delaware sufficient for the Court to constitutionally exercise personal jurisdiction over them, the Court must decide to what extent it may rely on the contacts that the three defendants had with Delaware in their capacities as corporate representatives of Mobil. Because this issue has not been addressed by the Supreme Court of Delaware, the Court in the first instance must decide to what extent the Delaware Supreme Court would recognize the fiduciary shield doctrine as a defense to personal jurisdiction. To support their reliance on the fiduciary shield doctrine, the individual counterclaim defendants cite *Plummer & Co. Realtors v. Crisafi,* 533 A.2d 1242, 1246–48 (Del.Super.1987), the only published decision by a state court of Delaware that addresses the fiduciary shield doctrine. In *Plummer,* the Superior Court of Delaware recognized the fiduciary shield doctrine as a valid defense to personal jurisdiction. Because the fiduciary shield doctrine had not been discussed by any prior published Delaware case, the superior court looked to Illinois decisional law,[1] and noted that the Illinois courts have adopted "the defense, known as the fiduciary

shield doctrine, ... to insulate employees and officers of a corporation from being sued in the courts of a jurisdiction where their sole contacts have been on behalf of their corporation." *Id.* at 1246 (citing *State Security Ins. Co. v. Frank B. Hall & Co.,* 530 F.Supp. 94, 97 (N.D.Ill.1981)). However, relying on an exception to the fiduciary shield doctrine, the superior court held that the fiduciary shield doctrine was unavailable to the defendants in *Plummer* because the defendant corporation was merely a "shell" for the individual defendants. *Id.* at 1247 (citing *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 902 (2d Cir.1981)). AERT counters that the fiduciary shield doctrine does not prevent the Court from exercising jurisdiction over the three individual counterclaim defendants because *Plummer* is of questionable validity. The Court agrees. First, in recognizing the fiduciary shield doctrine as a valid defense to personal jurisdiction in *Plummer* the superior court relied on an opinion by the District Court for the Northern District of Illinois which recognized that Illinois courts had adopted the fiduciary shield doctrine as a matter of judicial interpretation of Illinois' long-arm statute.[2] *Plummer,* 533 A.2d at 1246 (citing *State Security Ins. Co. v. Hall & Co.,* 530 F.Supp. 94, 97 (1981)). However, the Supreme Court of Illinois has recently revisited the doctrine and clarified that the legal underpinnings of the fiduciary shield doctrine in Illinois rest in Illinois' due process guarantees, and to a lesser extent in its long-arm statute. *Rollins,* 141 Ill.2d at 280, 565 N.E.2d at 1318.[3]

---

1. Since 10 *Del.C.* § 3104(c) is modelled after Illinois' long-arm statute, *Ill.Rev.Stat.* ch. 110, ¶ 2–209 (1985), Delaware courts look to Illinois law to interpret Delaware's long-arm statute. *Plummer & Co. Realtors v. Crisafi,* 533 A.2d 1242, 1246 (Del.Super.1987).

2. Although the superior court did not attempt to explain the authority upon which it based its recognition of the fiduciary shield doctrine, a fair reading of *Plummer* indicates that the court was interpreting Delaware's long-arm statute. First, the superior court cited a long-standing Delaware practice of "look[ing] to the legislative and decisional law of Illinois in interpreting [Delaware's long-arm] statute." *Plummer,* 533 A.2d at 1246. Second, in citing the New York case *Marine Midland,* the superior court noted that in New York "the fiduciary shield doctrine ... is

... a doctrine of judicial inference as to the intended scope of the long-arm statute." *Id.* at 1246 n. 2 (citing *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 902 n. 3 (2d Cir.1981)).

3. In *Rollins,* the Illinois court stated

when we ... consider whether Illinois courts can assert personal jurisdiction over a nonresident defendant by means of the long-arm statute, we will consider not only the literal meaning of the text of that statute ... but also the constraints imposed on jurisdiction by the Illinois Constitution's guarantee of due process. *Rollins,* 141 Ill.2d at 275, 152 Ill.Dec. at 398, 565 N.E.2d at 1316. Although the Illinois court found that Illinois' long-arm statute "would seem to authorize the circuit court's exercise of jurisdiction over [the defendant] in this case," the

In *Rollins*, the Supreme Court of Illinois stated,

> [W]e find it to be unfair and unreasonable, under Illinois' due process clause and the tenets of our concept of the jurisdictional power of the Illinois courts, to assert personal jurisdiction over an individual who seeks the protection and benefits of Illinois law ... to serve [the interests] of his employer or principal.

*Id.* To the extent that the authority for the fiduciary shield is grounded in a judicial construction of Illinois' long-arm statute, Illinois, unlike Delaware, has explicitly stated that its long-arm provisions are not necessarily coextensive with federal due process standards. *Id.* at 271–72, 152 Ill.Dec. at 396–97, 565 N.E.2d at 1314–15 ("Illinois' long-arm statute, therefore, may well restrict the power that the courts of this State have to bring nonresidents before them to a greater extent than do the Federal due process clause and the 'minimum contacts' standard....").

Second, the other case relied upon by the Delaware Superior Court, *Marine Midland*, has now been discredited by more recent New York authorities. In *Kreutter v. McFadden Oil Corp*, 71 N.Y.2d 460, 527 N.Y.S.2d 195, 199, 202–03, 522 N.E.2d 40, 44, 47–48 (N.Y.1988), the New York Court of Appeals held that New York does not recognize the fiduciary shield as a defense to personal jurisdiction. The New York Court of Appeals held that "it is neither necessary nor desirable to adopt the fiduciary shield doctrine in New York." *Id.* 527 N.Y.S.2d at 201, 522 N.E.2d at 46.

█ These recent developments greatly undermine the rationale supporting the superior court's recognition of the fiduciary shield doctrine as valid law in Delaware. As noted above, Delaware courts have interpreted Delaware's long arm statute expansively as conferring jurisdiction to the "maximum perimeters of the due process clause." *Transportes Aereos de Angola v. Ronair, Inc.*, 544 F.Supp. 858, 864 (D.Del.1982); *First State Construction, Inc. v. Pacific Engineering, Inc.*, C.A. No. 90–667–JJF, slip op. (D.Del. June 19, 1991). Federal due process does

not preclude Delaware from exercising personal jurisdiction over nonresident defendants that allegedly cause tortious injury in Delaware by an act in Delaware merely because the defendant was acting in a corporate capacity. In *Calder v. Jones*, 465 U.S. 783, 790, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804 (1984), the United States Supreme Court stated that for purposes of federal due process an individual is not shielded from personal jurisdiction merely because that individual has acted in a fiduciary capacity on behalf of a corporation. In responding to the petitioners' arguments that their conduct taken on behalf of their employer should not be considered in the minimum contacts analysis, the Supreme Court stated, "Petitioners are correct that their contacts with California are not to be judged according to their employer's activities there. On the other hand, their status as employees does not somehow insulate them from jurisdiction." *Id.* See also *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n. 13, 104 S.Ct. 1473, 1482 n. 13, 79 L.Ed.2d 790 (1984) ("[W]e today reject the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity.").

Given the Supreme Court's pronouncements in *Calder* and *Keeton*, in order for the Court to recognize the fiduciary shield doctrine as a valid principle under Delaware's long-arm statute, the Court must construe the statute as being more restrictive than federal due process requires. Such a construction would run counter to the expansive interpretation that Delaware courts have consistently applied to Delaware's long-arm statute. *Accord Columbia Briargate Co. v. First Nat'l Bank*, 713 F.2d 1052, 1057 (4th Cir.), *cert. denied*, 465 U.S. 1007, 104 S.Ct. 1001, 79 L.Ed.2d 233 (1983) (the fiduciary shield doctrine should not be adopted where the long-arm statute is designed to provide personal jurisdiction to the maximum permissible under the Constitution).

Furthermore, the fiduciary shield doctrine has come under considerable criticism by courts and commentators. Many of those

---

court held that it would be unfair, and thus violative of Illinois' due process guarantees to

exercise jurisdiction over the defendant. *Id.* at 274, 152 Ill.Dec. at 397, 565 N.E.2d at 1315.

criticizing the doctrine argue that long-arm statutes and constitutional fairness concerns adequately protect corporate employees. *See* R. Koenig, Personal Jurisdiction and the Corporate Employee: Minimum Contacts Meet the Fiduciary Shield, 38 Stan.L.Rev. 813, 830 (1986) (there exists "no convincing reason why the mere fact of corporate employment should alter the jurisdictional calculus"). Others insist that it unfairly prejudices plaintiffs who have valid claims against corporate defendants that have conducted affairs in the forum. *See* Sponsler, Jurisdiction Over the Corporate Agent: The Fiduciary Shield, 35 Wash. & Lee L.Rev. 349, 364 (1978). Even where courts have recognized the doctrine, they have fashioned various exceptions to it, as in *Plummer* where the Delaware Superior Court held that the doctrine cannot be used to shield the conduct of corporate employees where the corporation is a mere shell for the employee.

For these reasons, the Court concludes that the Supreme Court of Delaware would not recognize the fiduciary shield as an absolute bar to personal jurisdiction over a corporate employee. Therefore, in interpreting § 3104(c) to the maximum allowable limits of due process, the court will consider all forum related contacts of the three individual counterclaim defendants, even those taken in their fiduciary capacities.

## B. *SECTION 3104(c)(3)*

Subsection (c)(3) of Delaware's long arm statute gives the Court personal jurisdiction over any nonresident who causes tortious injury in Delaware by an act in Delaware. 10 Del.C. § 3104(c)(3) (1992 Supp.).[4] (D.I. 99, at 10). AERT alleges that the three counterclaim defendants have caused and are causing tortious injury in Delaware by filing and litigating this declaratory judgment ac-

tion as part of Mobil's attempt to monopolize the composite products market. Each of the three counterclaim defendants deny that they have caused tortious injury by an act or omission in Delaware, and argue that they do not have sufficient contacts with Delaware to support jurisdiction under § 3104(c)(3).

### 1. *Mr. Herbst*

■ Mr. Herbst is the Assistant General Counsel of Mobil Corporation with offices in Fairfax, Virginia. (D.I. 92 at ¶ 4). He resides in Potomac, Maryland. (D.I. 92 at ¶ 1). During the relevant times discussed in this litigation, Mr. Herbst was responsible for providing legal services to Mobil Chemical Company, an unincorporated division of Mobil Oil Corporation. (D.I. 92 at ¶ 3).

Mr. Herbst's sole contacts with Delaware in connection with the present controversy involved his participation in telephone conversations regarding the efforts of the parties to settle this litigation. During those calls, Mr. Herbst was in his office in Fairfax, Virginia, while speaking with AERT's counsel in Wilmington, Delaware.[5] Mr. Herbst also attended, as attorney for Mobil Oil Corporation, the August 19, 1992 deposition of Arthur C. Ferguson in Wilmington, Delaware. (D.I. 92 at ¶¶ 5, 9). Beyond these contacts, Mr. Herbst affirms, and AERT has not provided any contrary evidence, that he has had no connection with Delaware. (D.I. 92 at ¶ 9). He has performed no work, provided no services, nor participated in any activities in Delaware. (D.I. 92 at ¶ 10). He further affirms that any contacts with Delaware that have arisen related to this controversy were performed as an employee of Mobil Oil Corporation, not in his personal or individual capacity and that no action related

---

4. 10 *Del.C.* § 3104 provides in relevant part:
 (c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or his personal representative, who in person or through an agent:
 (1) Transacts any business or performs any character of work or service in the State;
 (2) Contracts to supply services or things in this State;

(3) Causes tortious injury in the State by an act or omission in the State; * * * *

5. He also affirms that he attended meetings in Mobil's offices in Fairfax, Virginia and Philadelphia, Pennsylvania and participated in telephone conversations between his offices in Fairfax or his home in Potomac and Norwalk, Connecticut or Philadelphia.

to Delaware served his personal interest. (D.I. 92 at ¶ 9).

AERT alleges that the Court may exercise jurisdiction over Mr. Herbst under subsection (c)(3) because Mr. Herbst caused tortious injury in Delaware by authorizing Mobil's declaratory judgment against AERT. To support this allegation, AERT directs the Court's attention to the transcript of Mr. Ferguson's deposition. (D.I. 24, Exhibit A). During Mr. Ferguson's deposition, Mr. Herbst indicated that he spoke extensively with Mr. Ferguson on the issue of Mobil's apprehension of litigation. (D.I. 24, Exhibit A, at 88–89). Mr. Herbst himself acknowledges that he participated in various meetings in connection with the present controversy. (D.I. 92 at ¶ 5). Also, Mr. Herbst does not dispute AERT's characterization that he, together with Mr. Ferguson, directed the filing of Mobil's declaratory judgment action.

On this record, the Court finds that Mr. Herbst's direction to file the Complaint on behalf of Mobil, and his subsequent attendance at Mr. Ferguson's deposition in Delaware, are sufficient acts in Delaware to support AERT's contention that Mr. Herbst allegedly caused (or is causing) tortious injury in Delaware. Thus, the Court concludes that subsection (c)(3) authorizes the exercise of jurisdiction over Mr. Herbst. This conclusion is supported by Delaware precedent establishing that subsection (c) of Delaware's long-arm statute is to be construed liberally, favoring the exercise of jurisdiction. *Mid–Atlantic Mach. & Fabric, Inc. v. Chesapeake Shipbuilding, Inc.*, 492 A.2d 250 (Del.Super.1985); *Waters v. Deutz Corp.*, 460 A.2d 1332 (Del.Super.1983).

### 2. *Mr. Ferguson*

■ Mr. Ferguson is employed by H. Muehlstein & Co., Inc., a wholly owned subsidiary of Mobil Corporation. (D.I. 86 at ¶ 2). Mr. Ferguson resides in Westport,

Connecticut. (D.I. 86 at ¶ 1). During the time relevant to the allegations in this case, Mr. Ferguson was responsible for the development of Mobil Chemical Company's composite product business. (D.I. 86 at ¶ 2).

Although Mr. Ferguson affirms that he participated in some events that gave rise to the present controversy, he asserts that none of these events occurred in Delaware.[6] (D.I. 86 at ¶ 5). Mr. Ferguson's sole contact with Delaware related to this litigation is his voluntary attendance as a 30(b)(6) deposition witness in Wilmington, Delaware on August 19, 1992. (D.I. 86 at ¶ 5).

Finally, Mr. Ferguson affirms that with respect to any subject identified in AERT's counterclaims, all work or services which he has performed "were performed in [his] fiduciary capacity as an employee and not in [his] personal or individual capacity." (D.I. 86 at ¶ 5). Moreover, Mr. Ferguson affirms that none of the actions or activities discussed above served his personal interests. (D.I. 86 at ¶ 5).

AERT alleges that Mr. Ferguson is subject to jurisdiction under subsection (c)(3) because Mr. Ferguson is the executive at Mobil responsible for authorizing the filing of the Complaint on behalf of Mobil. AERT has presented deposition testimony of Mr. Ferguson which tends to establish that Mr. Ferguson was the corporate representative of Mobil who authorized the filing of Mobil's declaratory judgment action. (D.I. 24, Exhibit A, at 43).[7] Mr. Ferguson was also the designated witness at a 30(b)(6) deposition held in Wilmington in connection with the instant litigation.

The Court finds Mr. Ferguson's authorization of the filing of this declaratory judgment action on behalf of Mobil and his presence in Delaware as a deposition witness in connection with the lawsuit together create sufficient contacts with Delaware to support personal jurisdiction under subsection (c)(3).

---

6. In addition, Mr. Ferguson affirms that he attended meetings in Fairfax, Norwalk, and Philadelphia, and participated in telephone conversations between Fairfax, Norwalk, or Westport and Philadelphia and Arkansas.

7. During the deposition the following question was asked of Mr. Ferguson: "Can you explain, if you were apprehensive about being in the situation where there is a little company suing a big company, why you authorized bringing the suit?" Mr. Ferguson answered: "I would be happy to . . . ."

Therefore, as with Mr. Herbst, the Court concludes that subsection (c)(3) authorizes the exercise of personal jurisdiction over Mr. Ferguson.

### 3. *Mr. Ferrari*

■ Mr. Ferrari is employed by Mobil Chemical Company. (D.I. 89 at ¶ 2). He resides in New Canaan, Connecticut. (D.I. 89 at ¶ 1). Mr. Ferrari affirms that with the exception of one visit to Delaware, unrelated to this litigation, he has not been present in Delaware since before 1990. (D.I. 89 at ¶ 5). Mr. Ferrari's only contact with Delaware, related to this controversy, is an affidavit that he filed in support of Mobil's efforts to establish the Court's subject matter jurisdiction over this controversy. Mr. Ferrari affirms that "all work or services which [he has] performed and any action [he] may have taken in connection with [AERT's counterclaims] were performed or taken outside the state of Delaware." (D.I. 89 at ¶ 5).

AERT has not alleged, much less provided the Court with competent evidence sufficient to establish, that Mr. Ferrari has sufficient contacts with Delaware to satisfy subsection (c)(3). By its unambiguous terms, subsection (c)(3) only applies when the defendant or an agent of the defendant performs some act in the state related to the cause of action. Unlike Mr. Herbst and Mr. Ferguson, Mr. Ferrari did not authorize or direct the filing of Mobil's declaratory judgment in Delaware.

■ AERT apparently bases long-arm jurisdiction over Mr. Ferrari solely on the affidavit that Mr. Ferrari submitted in support of Mobil's position in this lawsuit. Although the Court acknowledges that a single act may support jurisdiction under subsection (c)(3), *Eudaily v. Harmon,* 420 A.2d 1175 (Del.1980), the Court finds that there is not a sufficient nexus between AERT's claim of "sham litigation" and Mr. Ferrari's affidavit to support jurisdiction under subsection (c)(3). It is the filing of the lawsuit that is the basis of AERT's tortious conduct allegations, not Mr. Ferrari's affidavit. Because AERT cannot show that Mr. Ferrari caused tortious injury by an act *in Delaware,* the Court cannot exercise personal jurisdiction over Mr. Ferrari based on subsection (c)(3).

### C. CONSPIRACY

■ AERT also asserts that "the Court has jurisdiction over the individual counterclaim defendants under the conspiracy theory of jurisdiction." (D.I. 99, at 10 (citing *Istituto Bancario Italiano SpA v. Hunter Engineering Co.,* 449 A.2d 210 (Del.1982)). Because the Court finds that it has jurisdiction over Mr. Ferguson and Mr. Herbst under Delaware's long-arm statute, it is not necessary for the Court to consider whether it may properly exercise personal jurisdiction over them under a conspiracy theory. However, the Court will consider this alternative theory of obtaining personal jurisdiction with regard to Mr. Ferrari.

■ Under the conspiracy theory of obtaining personal jurisdiction, a court may in certain circumstances exercise personal jurisdiction over nonresidents based on the forum contacts of their co-conspirators. *Istituto Bancario Italiano,* 449 A.2d at 225 (setting out the elements that must be satisfied before personal jurisdiction may be exercised under the conspiracy theory).

Without considering whether AERT has provided sufficient factual support to establish each of the elements to establish personal jurisdiction over Mr. Ferrari under the conspiracy theory, the Court finds that AERT's reliance on the conspiracy theory is misplaced. Ferrari, like Ferguson and Herbst is an employee of a subsidiary of Mobil, Mobil Chemical. The United States Supreme Court has squarely rejected the notion that intra-enterprise actors can conspire with each other for purposes of antitrust liability. *Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984). In *Copperweld,* the Supreme Court stated that "the coordinated activity of a parent and its wholly owned subsidiary must be viewed as that of a single enterprise." *Id.* at 771, 104 S.Ct. at 2741. Therefore, because Mr. Ferrari, by definition, cannot conspire with Mobil, Mobil Chemical, Mobil Corporation, Mr. Herbst, and Mr. Ferguson, the Court concludes no personal jurisdiction exists over Mr. Ferrari based on the conspiracy alleged by AERT.

### D. DUE PROCESS

 Even though the Court finds that jurisdiction over Mr. Herbst and Mr. Ferguson is permitted under Delaware's long-arm statute, the Court must also ensure that the exercise of such jurisdiction comports with federal due process. Federal due process precludes the exercise of jurisdiction where the defendant does not have minimum contacts with the forum, so that exercise of jurisdiction would "violate traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

 In this regard, there are two means by which a court may constitutionally exercise personal jurisdiction over a defendant. First, where the plaintiff's claim arises out of the defendant's contacts with the forum (specific jurisdiction), a court may exercise personal jurisdiction if "'the defendant should reasonably anticipate being haled into court there.'" *North Penn Gas Co. v. Corning Natural Gas Corp.,* 897 F.2d 687, 690 (3d Cir.), *cert. denied,* 498 U.S. 847, 111 S.Ct. 133, 112 L.Ed.2d 101 (1990) (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)). Second, where the claim arose from nonforum related contacts (general jurisdiction), a court may exercise personal jurisdiction only if the defendant maintained "continuous and substantial" contacts with the forum. *Reliance Steel Products Co. v. Watson, Ess, Marshall & Enggas,* 675 F.2d 587, 588–89 (3d Cir.1982).

 AERT. premises its claim of jurisdiction over the individual defendants on subsection (c)(3), which is a specific jurisdiction provision. *See Sears, Roebuck & Co. v. Sears,* 744 F.Supp. 1289, 1302 (D.Del.1990). In determining whether the exercise of specific jurisdiction is appropriate the Court must consider the relationship among the defendant, the litigation, and the forum. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 & n. 8, 104 S.Ct. 1868, 1872, n. 8, 80 L.Ed.2d 404 (1984). The relationship would support the exercise of jurisdiction if the defendant purposefully directs his conduct toward the distant forum. *Burg-*

*er King Corp. v. Rudzwicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985). "If the defendant engaged in some act or conduct by which he may be said to have invoked the benefits and protections of the forum, then it is reasonable and just to require him to litigate a dispute arising therefrom in that state." *Transportes Aereos de Angola v. Ronair, Inc.,* 544 F.Supp. 858, 865 (D.Del.1982).

With these principles in mind, the Court concludes that exercising jurisdiction over Herbst and Ferguson would not violate traditional notions of fair play and substantial justice. By authorizing and directing the filing of Mobil's declaratory judgment lawsuit in Delaware, Mr. Herbst and Mr. Ferguson purposefully availed themselves of the benefits and protections of Delaware. Mr. Herbst and Mr. Ferguson are not being subjected to personal jurisdiction as a result of random or fortuitous or attenuated contacts. It is their own conduct in directing the filing of the lawsuit on behalf of Mobil in Delaware that created their connection with Delaware. *See Burger King,* 471 U.S. at 472, 105 S.Ct. at 2181 ("Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a "substantial connection" with the forum state.").

This case does not present the situation where the plaintiff is attempting to secure jurisdiction over a corporate employee who played no part in the alleged tortious corporate conduct. Mr. Ferguson and Mr. Herbst were the primary actors involved in Mobil's lawsuit in Delaware.

Moreover, the Court is not convinced that defending AERT's counterclaims in Delaware as opposed to some other forum presents any great inconvenience to Mr. Herbst and Mr. Ferguson. Both will likely be called upon to testify on behalf of Mobil to defend similar claims that AERT has lodged against Mobil Oil Corporation. *Accord Kreutter v. McFadden Oil Corp,* 71 N.Y.S.2d at 202, 522 N.E.2d at 47. Because Mr. Ferguson and Mr. Herbst have sought on behalf of Mobil the benefits and protections of litigating in Delaware, the Court concludes it would not

violate federal due process to exercise personal jurisdiction over them on counterclaims arising out of that same litigation.

Specifically, the Court's holding is limited to the facts presented by this case, i.e., where a corporate officer authorizes the filing of lawsuit on behalf of a corporation, and the defendant of that lawsuit counterclaims, with the subject of the counterclaim being the lawsuit itself.

### V. CONCLUSION

Mr. Ferguson's and Mr. Herbst's Motions to Dismiss will be denied. AERT has demonstrated sufficient facts to support a finding that Mr. Ferguson and Mr. Herbst have the constitutionally required minimum contacts with Delaware. The Court will grant Mr. Ferrari's Motion to Dismiss because AERT is has not met its burden of establishing that Mr. Ferrari caused tortious injury in Delaware by an act in Delaware. An appropriate Order will be entered.