# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

EBP LIFESTYLE BRANDS     :
HOLDINGS, INC.,     :
    :
        Plaintiff,     :
    :     **C.A. No. 2017-0269-JRS**
        v.     :
    :
YANN BOULBAIN,     :
    :
        Defendant.     :

## MEMORANDUM OPINION

Date Submitted: June 2, 2017
Date Decided: August 4, 2017

John W. Shaw, Esquire, Karen E. Keller, Esquire and David M. Fry, Esquire of Shaw Keller LLP, Wilmington, Delaware, and Michael J. Abrams, Esquire and Landon W. Magnusson, Esquire of Lathrop & Gage LLP, Kansas City, Missouri, Attorneys for Plaintiff.

John A. Sensing, Esquire and Jesse L. Noa, Esquire of Potter Anderson & Corroon LLP, Wilmington, Delaware, Attorneys for Defendant.

**SLIGHTS, Vice Chancellor**

Plaintiff, EBP Lifestyle Brands Holdings, Inc. ("EBP"), seeks to enforce non-compete and non-solicitation clauses in a stockholders' agreement (the "Stockholders' Agreement") it entered into with Defendant, Yann Boulbain, when Boulbain exercised options to acquire EBP stock. Boulbain acquired his stock options while working for a subsidiary of EBP. When Boulbain was terminated from that position, EBP agreed that he could exercise his options post-termination. Upon Boulbain's exercise of his options, EBP required that he execute the Stockholders' Agreement, which includes covenants not to compete with or solicit employees from EBP.

The Stockholders' Agreement contains a Delaware choice of law clause, presumably because California, where EBP is based, will not enforce employee non-compete provisions for public policy reasons. When two of EBP's competitors, also based in California, hired Boulbain to be their CEO, and Boulbain then allegedly solicited EBP employees to join him at the companies, EBP alleged that Boulbain was in breach of the non-compete and non-solicitation clauses in the Stockholders' Agreement. EBP then initiated this action against Boulbain for specific performance and injunctive relief.

Boulbain has moved to dismiss the claims pursuant to Court of Chancery Rule 12(b)(2) for lack of personal jurisdiction and Court of Chancery Rule 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons that

1

follow, I have determined that this Court lacks personal jurisdiction over Boulbain. Accordingly, EBP's Verified Complaint for Injunctive Relief (the "Complaint") must be dismissed.

## I. BACKGROUND

In considering the Defendant's motion to dismiss, I have drawn the facts from well-pled allegations in the Complaint, documents integral to the Complaint and matters of which I may take judicial notice.[1]  At this stage in the proceedings, I presume that that all well-pled factual allegations in the Complaint are true.[2]

### A. Parties and Relevant Non-Parties

Plaintiff, EBP, is a closely-held Delaware corporation with its principal place of business in California.  EBP is the ultimate parent and owner of The ERGO Baby Carrier, Inc. ("ERGO"), a Hawaii corporation.  ERGO designs, develops and sells ergonomic baby-carriers and other infant products.

Defendant, Yann Boulbain, is currently the CEO of Petunia Pickle Bottom, Corp. ("Petunia") and Moby Wrap, Inc. ("Moby").  Both companies are owned by Barbaras Development, Inc. and operate in the infant products market.  Boulbain was previously employed at ERGO as the Senior Vice President of Global Sales.  He

---

[1] *In re Crimson Exploration Inc. S'holder Litig.*, 2014 WL 5449419, at *8 (Del. Ch. Oct. 24, 2014).

[2] *Id.*

holds stock in EBP that he acquired through the exercise of options granted in reward for his service to ERGO. Boulbain is a resident of California and is employed in California. He has never been to Delaware and does not own property in Delaware.

## B. Boulbain Exercises his Stock Options

Boulbain began working at ERGO in 2011 as the Senior Vice President of Global Sales. During his employment, he was offered and executed stock option agreements in April 2011 and May 2012 to induce him to remain at the company and to incentivize his work performance. As a condition to the exercise of either set of stock options, Boulbain was required to execute the company's Stockholders' Agreement.

In late 2016, ERGO terminated Boulbain's employment. On December 19, 2016, EBP and Boulbain amended Boulbain's stock option agreements to permit him to exercise the options after his termination. Boulbain exercised his options on December 20, 2016. In accordance with the stock option agreements, Boulbain executed the Stockholders' Agreement on December 21, 2016.

The Stockholders' Agreement contains a covenant not to compete, covenants not to solicit EBP employees or customers and a Delaware choice of law clause. It does not, however, contain a Delaware forum selection clause or a Delaware consent to jurisdiction clause. The non-compete clause prevents stockholders from

> directly or indirectly . . . manag[ing], operat[ing], join[ing], control[ling], participat[ing] in, consult[ing] with, render[ing] services

3

for, be[ing] connected as a stockholder, member, manager, director, officer, employee or partner, or in any other manner engag[ing] in any business, firm, entity, organization or enterprise which (i) competes with [EBP] or its subsidiaries in any business engaged in by [EBP] and/or its subsidiaries anywhere in the world or (ii) is otherwise engaged in the design, manufacture, sale, distribution or marketing of juvenile or infant products of any kind.[3]

The employee non-solicitation clause prevents stockholders from

directly or indirectly (i) solicit[ing] or induc[ing], or attempt[ing] to solicit or induce or assist any Person in soliciting or inducing any employee or sales representative of [EBP] or any subsidiary to leave the employ or engagement of [EBP] or such subsidiary, or in any way interfere with the relationship between [EBP] or any subsidiary and any such employee or sales representative thereof.[4]

The Stockholders' Agreement bars stockholders from engaging in any of the prohibited activities absent permission from the EBP Board. Stockholders are bound by the Stockholders' Agreement for two years after the final disposition of their shares. And such disposition is subject to "the prior written consent of the Majority Stockholder, which consent may be withheld in the Majority Stockholder's absolute discretion."[5]

---

[3] Verified Compl. for Injunctive Relief ("Compl.") Ex. H, at § 4.1(a).

[4] *Id.* at § 4.1(b).

[5] *Id.* at § 2.2.

4

As announced on March 30, 2017, Boulbain became the CEO of Moby and Petunia, both of which compete with EBP in the infant products market. He performs this function out of the companies' offices in California.

## C. Procedural Posture

On April 7, 2017, EBP filed its Complaint alleging breach of the Stockholders' Agreement and seeking specific performance of the contract. Specifically, EBP alleges that Boulbain has violated the non-compete clause through his employment at Moby and Petunia and that he has breached the non-solicitation clause by soliciting ERGO employees to join him at his new employment. In the alternative to its prayer for specific performance, EBP seeks equitable rescission of Boulbain's shares. Boulbain moved to dismiss the Complaint on April 18, 2017.

## II.  ANALYSIS

I begin by addressing whether this Court may exercise personal jurisdiction over Boulbain. Because I find that personal jurisdiction is lacking, I need not reach Boulbain's argument that the Complaint fails to state a claim upon which relief may be granted.

## A.  Motion to Dismiss for Lack of Personal Jurisdiction Standard

When a defendant moves to dismiss a complaint for lack of personal jurisdiction under Court of Chancery Rule 12(b)(2), "the plaintiff bears the burden of showing a basis for the court's exercise of jurisdiction over the nonresident

defendant."[6] To meet this burden, "the plaintiff must make a *prima facie* showing of personal jurisdiction."[7] In practical terms, the plaintiff must demonstrate that jurisdiction is permitted under the state's long-arm statute and that the exercise of jurisdiction is consistent with due process.[8] If the court makes the determination regarding personal jurisdiction without an evidentiary hearing, it will consider the pleadings, affidavits and evidence of record and will draw all reasonable inferences therefrom in favor of the plaintiff.[9]

## B. Delaware's Long-Arm Statute does not Establish Personal Jurisdiction Over Boulbain

EBP argues that jurisdiction is permissible pursuant to the Delaware long-arm statute at 10 *Del. C.* § 3104(c)(1).[10] Section 3104(c)(1) provides:

> As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent: (1) Transacts any business or performs any character of work or service in the State.

---

[6] *Werner v. Miller Tech. Mgmt., L.P.*, 831 A.2d 318, 326 (Del. Ch. 2003).

[7] *Sustainable Energy Generation Gp., LLC v. Photon Energy Projects B.V.*, 2014 WL 2433096, at *5 (Del. Ch. May 30, 2014).

[8] *Werner,* 831 A.2d at 326.

[9] *Ryan v. Gifford*, 935 A.2d 258, 265 (Del. Ch. 2007).

[10] The Complaint also alleges that personal jurisdiction is bestowed by 10 *Del. C.* § 366 and 8 *Del. C.* § 169. Compl. ¶¶ 7–8. EBP abandoned these jurisdictional hooks in its briefing on the motion to dismiss, and they are therefore waived. *See Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) ("Issues not briefed are deemed waived.").

Section 3104(c)(1) is a specific personal jurisdiction statute.[11]   Therefore, to establish personal jurisdiction pursuant to Section 3104(c)(1), a plaintiff must demonstrate both that: "(1) the nonresident transacted some sort of business in the state, and (2) the claim being asserted arose out of that specific transaction."[12]  In an attempt to satisfy these two requirements, EBP maintains that Boulbain may be deemed to have transacted business in this State when he entered into the Stockholders' Agreement with a Delaware corporation (EBP) and when he caused ERGO, Moby and Petunia to engage in various transactions that were connected to Delaware.  Both arguments miss the mark.

EBP acknowledges that the agreement's "choice-of-law provision, standing alone, would be insufficient to confer personal jurisdiction."[13]  Nevertheless, it maintains that the Delaware choice of law provision is integral to the rest of the analysis regarding whether this Court may exercise personal jurisdiction over

---

[11] *Ruggiero v. FuturaGene, plc.*, 948 A.2d 1124, 1135 (Del. Ch. 2008).  Specific jurisdiction requires that the "nonresident defendant's minimum contacts with the forum . . . give rise to the particular controversy." *Sternberg v. O'Neil*, 550 A.2d 1105, 1118 (Del. 1988).  In contrast, "general jurisdiction . . . grants authority to a state's courts to 'assert [] jurisdiction over a nonresident defendant on the basis of wholly unrelated contacts with the forum.'" *Genuine Parts Co. v. Cepec*, 137 A.3d 123, 129 (Del. 2016).

[12] *Fisk Ventures, LLC v. Segal*, 2008 WL 1961156, at *7 (Del. Ch. May 7, 2008).

[13] Pl.'s Opp'n to Def.'s Cross-Mot. to Dismiss ("Pl.'s Opp'n") 6.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482–83 (1985) (noting that the inclusion in a contract of a choice of law provision by itself is insufficient to confer personal jurisdiction, but should be considered in the analysis).

Boulbain. In this regard, EBP relies upon *NRG Barriers, Inc. v. Jelin*[14] where the court found that the following four factors were sufficient to satisfy Section 3104(c)(1): (1) the defendant owned shares in a closely-held Delaware corporation; (2) the defendant entered into a stock purchase agreement to sell his shares to another shareholder who was also a director of the corporation; (3) the defendant signed a stock purchase agreement that included a Delaware choice of law provision; and (4) Delaware attorneys were involved in negotiating the stock purchase agreement.[15] EBP argues that three of these factors are satisfied here since Boulbain owns shares in EBP, a closely-held Delaware corporation, he entered into the Stockholders' Agreement with EBP and the Stockholders' Agreement includes a Delaware choice of law provision. EBP then cites to *Hadley v. Shaffer*[16] for the proposition that the lack of involvement of Delaware attorneys in the drafting of the operative contract should not defeat jurisdiction where the other three *NRG Barriers* factors are present.[17]

---

[14] 1996 WL 377014 (Del. Ch. July 1, 1996).

[15] *Id.* at *3.

[16] 2003 WL 21960406 (D. Del. Aug. 12, 2003).

[17] *Id.* at *8.

EBP's reliance upon *NRG Barriers* and *Hadley* is misplaced. In both cases, the courts stressed the importance of the parties seeking "Delaware involvement unequivocally" in connection with their negotiation and execution of the contracts at issue there.[18] While it is true that Boulbain owns shares in a closely-held Delaware corporation and entered into a Stockholders' Agreement with a Delaware choice of law provision, Boulbain has done nothing to invoke Delaware law or to avail himself of its protections. Boulbain had no hand in the negotiations or drafting of the Stockholders' Agreement; it was a form agreement he was required to sign in connection with his exercise of stock options. Nor did he otherwise purposefully avail himself of Delaware or its laws. Unlike the defendants in *NRG Barriers* and *Hadley*, EBP has neither pled nor otherwise demonstrated that Boulbain has "transacted business" in Delaware by virtue of his execution of the Stockholders' Agreement.

EBP also makes a policy-based plea that the exercise of personal jurisdiction over Boulbain is especially important here given that a California court likely would refuse to enforce the non-compete clause since California's public policy disfavors such restrictions. EBP confuses the policy considerations implicated by a choice of law analysis with the statutorily and constitutionally required analyses for

---

[18] *NRG*, 1996 WL 377014, at *3. *See also Hadley*, 2003 WL 21960406, at *5–9.

9

determining whether the court's exercise of personal jurisdiction is appropriate.[19] The fact that a California court may decline to enforce the non-compete clause in the Stockholders' Agreement does not and cannot alter the fact that EBP has failed to demonstrate that Boulbain has transacted business in Delaware such that the Court may exercise personal jurisdiction over him pursuant to Section 3104(c)(1).

EBP next argues that Boulbain has transacted business in Delaware through his work at ERGO, Moby and Petunia. According to EBP, as Senior Vice President of Global Sales at ERGO, Boulbain "helped [EBP] products reach Delaware customers and was ultimately responsible for EBP's sales in this state."[20] And, as Moby and Petunia's CEO, Boulbain must be doing "something" to direct sales and transactions into Delaware or, at the very least, he has consented to such sales and transactions and should therefore be held responsible for them.[21]

---

[19] *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 778 (1984) (holding that choice of law analysis has "nothing to do with" the determination of whether a defendant has sufficient contacts with the forum to justify the exercise of personal jurisdiction over him).

[20] Pl.'s Opp'n 1.

[21] *Id.* at 12. EBP makes these claims, however, without any indication that Boulbain actually directed either company's sales to Delaware. EBP claims that jurisdictional discovery will show that Boulbain directed sales to Delaware. No jurisdictional discovery is necessary, however, because, as I explain later, any transactions that Moby and Petunia may consummate in Delaware are unrelated to Boulbain's alleged breaches of the Shareholders' Agreement and therefore would be insufficient to warrant the exercise of personal jurisdiction over him. *See Hart Hldg. Co. Inc. v. Drexel Burnham Lambert Inc.*, 593 A.2d 535, 539 (Del. Ch. 1991).

In response, Boulbain argues that any actions taken by EBP, Moby or Petunia cannot be imputed to him for the purposes of establishing personal jurisdiction because to find otherwise would violate the so-called fiduciary shield doctrine. This doctrine generally states that the acts of a nonresident corporate employee taken in his official capacity cannot be used as a basis to exercise jurisdiction over that employee.[22] Boulbain acknowledges, however, that conflicting authority provides reason to question whether *vel non* the fiduciary shield doctrine is recognized in Delaware law.[23]

Boulbain has good reason to invoke the fiduciary shield doctrine since there is little doubt that, if recognized in Delaware, the doctrine would block EBP's attempt to haul Boulbain into court here given that Boulbain engaged in all of the activities EBP has proffered as bases for jurisdiction in his capacity as an officer of either EBP, Moby or Petunia. With that said, I need not determine whether the

---

[22] *Tristrata Tech., Inc. v. Neoteric Cosmetics, Inc.*, 961 F. Supp. 686, 690 (D. Del. 1997) ("The purpose of the fiduciary shield doctrine is to prohibit acts performed by an individual in the individual's capacity as a corporate employee from serving as the basis for personal jurisdiction over that individual.").

[23] *Compare Mobil Oil Corp. v. Advanced Envtl. Recycling Techs., Inc.*, 833 F. Supp. 437, 440–43 (D. Del. 1993) (analyzing the case law and policy underlying the fiduciary shield doctrine and determining that the Delaware Supreme Court likely would not recognize the doctrine as an absolute bar to personal jurisdiction) *with Mktg. Prods. Mgmt., LLC v. HealthandBeautyDirect.com, Inc.*, 2004 WL 249581, at *3 (Del. Super. Ct. Jan. 28, 2004) (applying the fiduciary shield doctrine as a bar to personal jurisdiction over a corporate employee, relying on a previous decision of the Superior Court that predates *Mobil Oil*).

fiduciary shield doctrine is (or ever was) Delaware law for the simple reason that none of the purported "transactions" identified by EBP involving EBP, Moby and Petunia are adequate to justify the exercise of jurisdiction over Boulbain in any event. To reiterate, Section 3104(c)(1) is a specific jurisdiction statute. This means that the transactions EBP points to as bases to confer personal jurisdiction over Boulbain must be the transactions out of which its causes of action as alleged in the Complaint arise.[24]

Here, EBP has failed to plead or otherwise demonstrate that its claims for breach of the Stockholders' Agreement arise out of any business that Boulbain (or any employee he might direct or might have hired) has transacted in Delaware on behalf of any of the three companies involved here. Regardless of any national sales campaigns or sales directed to Delaware by any of the three companies, the terms of the non-compete clause provide that a breach occurs when Boulbain accepts employment or associates with an EBP competitor in any manner proscribed by the Agreement. EBP acknowledges as much when it alleged:

> Indisputably, Mr. Boulbain's decision to accept a position as the CEO of Moby and Petunia and act on their behalf violates the covenant's prohibition against 'manag[ing], operat[ing], join[ing], control[ling], participat[ing] in, consult[ing] with, render[ing] services for . . . any business . . . which (i) competes with [EBP] or its subsidiaries . . . or

---

[24] *Genuine Parts*, 137 A.3d at 129–30.

(ii) is otherwise engaged in the design, manufacture, sale, distribution or marketing of juvenile or infant products of any kind.'[25]

Thus, it was Boulbain's acceptance of the position as CEO at businesses that compete with EBP that prompted EBP to allege that he is in breach of the non-compete clause.[26] This would be true regardless of whether these businesses transact business in Delaware or in any other particular State. Indeed, based on the allegations in the Complaint, it is evident that the alleged breach occurred in California where Boulbain accepted employment as Moby and Petunia's CEO and now shows up every day at their offices to fulfill that function. As the United States Supreme Court recently reiterated, "[w]hen there is no such connection [between the activity that takes place in the forum state and the underlying controversy], specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State."[27]

---

[25] Pl.'s Opening Br. in Supp. of its Mot. to Expedite ¶ 14 (quoting Compl. Ex. H, at § 4.1(a)).

[26] *See* Compl. ¶¶ 1, 42–43 ("Mr. Boulbain breached the Stockholders' Agreement when he agreed to become the CEO of Moby"; "Mr. Boulbain breached the Stockholders' Agreement when he accepted to become the CEO of Petunia.").

[27] *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., SF. Cty.*, 137 S. Ct. 1773, 1781 (2017) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 931 n.6 (2011)) ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales."). In *Bristol-Myers Squibb*, the Supreme Court held that a defendant's entering into a nationwide distribution contract with a company from the forum state was "not enough to establish personal jurisdiction in the State." *Id.* at 1783.

13

This holds true as well for EBP's claim for breach of the non-solicitation clause in the Shareholders' Agreement. Boulbain has never been to Delaware, so any alleged solicitation of an EBP employee certainly did not take place here. Once again, EBP acknowledges the lack of a relevant connection to Delaware when it alleges that "Boulbain breached the Stockholders' Agreement when he solicited ERGO employees to leave ERGO and join him at Moby or Petunia," [28] and thereby confirms that the alleged breach arises out of Boulbain's actions in California when he hired these employees, not any instances where these employees might transact business on behalf of Moby or Petunia in Delaware.

EBP has failed to meet its burden of demonstrating that the Delaware long-arm statute permits the exercise of personal jurisdiction over Boulbain. This alone is a basis to grant Boulbain's motion.

## C. The Exercise of Personal Jurisdiction over Boulbain would Offend Due Process

Boulbain's second challenge to the Court's exercise of personal jurisdiction over him is grounded in notions of due process. Here again, Boulbain's argument rings true.

---

[28] Compl. ¶ 44.

In the personal jurisdiction context, the due process inquiry centers on whether the defendant "engaged in sufficient 'minimum contacts' with the State of Delaware to require [him] to defend [himself] in the courts of the state consistent with the traditional notions of fair play and justice."[29]  As a practical matter, this requires a plaintiff to establish that a nonresident defendant engaged in "deliberate, 'significant activities' in Delaware."[30]  Specifically, a defendant's contacts with Delaware "must rise to such a level that [he] should reasonably anticipate being required to defend [himself] in Delaware's courts."[31]  And the contacts proffered by the plaintiff to meet his burden must "relate to some act by which the defendant has deliberately created obligations between [himself] and this forum."[32]

EBP argues that the exercise of jurisdiction over Boulbain would not violate due process because he "is no stranger to this forum when it comes to directing and overseeing business in Delaware and transactions with Delaware corporations" through his roles at EBP, Moby and Petunia.[33]  EBP's theory of minimum contacts

---

[29] *AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 440 (Del. 2005). *See also Burger King*, 471 U.S. at 472.

[30] *Outokumpu Eng'g Enters., Inc. v. Kvaerner EnviroPower, Inc.*, 685 A.2d 724, 731 (Del. Super. Ct. 1996) (quoting *Burger King*, 471 U.S. at 475–76).

[31] *2009 Caiola Family Trust v. PWA, LLC¸* 2014 WL 7232276, at *6 (Del. Ch. Dec. 18, 2014).

[32] *Id.* (internal quotation marks omitted).

[33] Pl.'s Opp'n 19.

15

stretches notions of due process beyond the breaking point. Indeed, by EBP's lights, any officer of any national company would be subject to personal jurisdiction in any state in which the company transacts business, even if that business was not at issue in the litigation. That EBP has failed to cite any authority in support of this super-agency theory of personal jurisdiction is not at all surprising.[34]

EBP also fails to demonstrate that Boulbain has done anything purposefully to avail himself of the privileges and protections of Delaware law. The dispute at issue is based on a contract that Boulbain executed in California arising from conduct in which Boulbain allegedly has engaged and continues to engage in California. The only connection to Delaware is that EBP is a Delaware corporation and that the Stockholders' Agreement contains a Delaware choice of law provision. And, in that latter regard, as I have already determined, Boulbain did not purposefully avail himself of Delaware law—he was merely given the company's Stockholders' Agreement that contained a Delaware choice of law clause and told that he must sign

---

[34] Here again, I see no basis to allow jurisdictional discovery into whether Boulbain directed agents to perform competitive activity in Delaware, as EBP has requested. To reiterate, the essence of EBP's claim is that Boulbain took a job with competitors in violation of the non-compete clause in the Stockholders' Agreement regardless of where those competitors conduct business, and that he violated the non-solicitation clause regardless of where the employees he recruited might perform their work. These activities would not create any anticipation in Boulbain that he might be hauled into court here nor would they "create[] obligations" between Boulbain and Delaware that would rise to the level of significance in the due process analysis. *Albert v. Alex. Brown Mgmt. Servs., Inc.*, 2005 WL 2130607, at *15 (Del. Ch. Aug. 26, 2005).

it if he wished to exercise his stock options. These facts are a far cry from the kind of "minimum contacts" that would satisfy due process.[35]

EBP next contends that jurisdiction over Boulbain would not offend "traditional notions of substantial justice" when one considers: "the burden on the defendant . . . , the forum State's interest in adjudicating the dispute . . . , the plaintiff's interest in obtaining convenient and effective relief . . . , the interstate judicial system's interest in obtaining the most efficient resolution of controversies[,] and the shared interest of the several States in furthering fundamental social policies."[36] While these interests are certainly relevant to the due process examination, our law is clear that the primary focus of the analysis when considering competing interests is on the burden that litigating in plaintiff's chosen forum would impose on the defendant.[37] In this regard, EBP argues that the burden

---

[35] *See Burger King*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."); *Mobile Diagnostic Gp. Hldgs., LLC v. Suer*, 972 A.2d 799, 805 (Del. Ch. 2009) ("It is well settled law that 'a contract between a Delaware corporation and a nonresident to transact business outside Delaware, which has been negotiated without any contacts with this State, cannot alone serve as a basis for personal jurisdiction over the nonresident for actions arising out of that contract.'") (quoting *Newspan, Inc. v. Hearthstone Funding Corp.*, 1994 WL 198721, at *6 (Del. Ch. May 10, 1994)).

[36] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

[37] *See, e.g.*, *Bristol-Myers Squibb*, 137 S. Ct. at 1780 ("[T]he primary concern is the burden on the defendant.") (internal quotation marks omitted); *World-Wide Volkswagen*, 444 U.S. at 292 ("The relationship between the defendant and the forum must be such that it is 'reasonable . . . to require the [defendant] to defend the particular suit which is brought

on Boulbain to litigate in Delaware would be minimal because he is a "world traveler who had no difficulty obtaining counsel in Delaware."[38] Leisure travel aside, EBP conveniently ignores that Boulbain lives and works day in and day out in California. While he may, one day, *choose* to visit our fine State, he has done nothing that would justify hauling him into court here to defend these claims.[39]

In its final sally, EBP argues that Delaware's interest in this dispute is strong due to its interest in protecting its corporate citizens, which extends to breach of contract disputes.[40] This is especially so in this case, according to EBP, since California courts likely will refuse to apply Delaware law with respect the non-compete clause in the Stockholders' Agreement notwithstanding that contract's clear Delaware choice of law provision. This court has already determined, however, that

---

there.' Implicit in this emphasis on reasonableness is the understanding that the burden on the defendant, while always a primary concern, will in an appropriate case be considered in light of other relevant factors. . . .").

[38] Pl.'s Opp'n 21.

[39] *Summit Investors II, L.P. v. Sechrist Indus., Inc.*, 2002 WL 31260989, at *4 (Del. Ch. Sept. 20, 2002) (holding that the exercise of personal jurisdiction would violate due process given the substantial burden on the defendant because he resided and worked in California, and the object of the action was a contract formed in California).

[40] *See Dippolt-Harmon Enters., Inc. v. Lowe's Cos., Inc.*, 2001 WL 1414868, at *4 (D. Del. Nov. 13, 2001) ("Delaware has an interest in this action. [The plaintiff] is a Delaware corporation. Clearly this forum's interests extend to corporate citizens that have sought protection of Delaware's laws. Moreover, Delaware has an interest in addressing those purposeful activities conducted within its borders that result in allegations of injury. That interest extends to breaches of contract, such as that alleged here.").

"California's interest in preventing the enforcement of a covenant not to compete against a California resident employed and seeking to compete largely in California—and not in Delaware—is greater than Delaware's general, though profound, interest in vindicating freedom of contract."[41]  Moreover, as noted, the competing interests EBP has identified cannot overcome Boulbain's lack of even minimal contacts with Delaware.  EBP's failure to demonstrate sufficient minimum contacts mandates the conclusion that the exercise of personal jurisdiction over Boulbain would "offend 'traditional notions of fair play and substantial justice.'"[42]

## III. CONCLUSION

Having determined that Delaware's long-arm statute does not provide a basis to exercise personal jurisdiction over Boulbain and that doing so would, in all events, offend due process, Boulbain's motion to dismiss pursuant to Court of Chancery Rule 12(b)(2) must be GRANTED.[43]

---

[41] *Ascension Ins. Hldgs. v. Underwood*, 2015 WL 356002, at *5 (Del. Ch. Jan. 28, 2015).

[42] *World-Wide Volkswagen*, 444 U.S. at 292, 295–99 (holding that where there was a "total absence of [] affiliating circumstances that are a necessary predicate to any exercise of state-court jurisdiction," exercise of personal jurisdiction would not be consistent with due process). *Cf. Dippold-Harmon*, 2001 WL 1414868, at *4 (holding that where the defendant had "significantly more than minimal contacts with [the] forum" coupled with Delaware's interest in enabling its corporate citizens to "address[] those purposeful activities conducted within its borders that result in allegations of injury . . . [including] breaches of contract," the burden on the defendant was "not so onerous as to run afoul of traditional notions of fair play and substantial justice").

[43] While my decision here is limited to the personal jurisdiction issue, I note that Boulbain's motion under Rule 12(b)(6) is likely governed by *Ascension*, where, as noted, the court

**IT IS SO ORDERED.**

_____

declined to enforce a non-compete after determining under the Restatement (Second) of Conflict of Laws § 187 that California had a materially greater interest in the dispute than Delaware, notwithstanding the Delaware choice of law provision, because the contract with the non-compete was between a California resident, who also worked in California, and a Delaware LLC that had its principal place of business in California; was negotiated in California; was executed in California; and involved a non-compete that was allegedly violated in California. 2015 WL 356002, at *5. The facts here are remarkably similar. Moreover, even if the Court determined that the Delaware choice of law clause in the Stockholders' Agreement was enforceable, I would likely still conclude that the non-compete clause was unreasonable in scope and duration and, therefore, void under Delaware law. *See Del. Exp. Shuttle, Inc. v. Older*, 2002 WL 31458243 at *11, 14 (Del. Ch. Oct. 23, 2002) (stating that non-compete covenants must "be reasonably limited with respect to both geography and time . . . [and] must as well advance a legitimate economic interest of the employer"). Here, the non-compete clause prohibits Boulbain from "engag[ing] in the design, manufacture, sale, distribution or marketing of juvenile or infant products of any kind" "anywhere in the world" for a period of two years after the disposition of his shares, which is contingent upon the entirely discretionary approval of EBP's majority stockholder. Compl. Ex. H., at § 4.1(a).