**TRISTRATA TECHNOLOGY, INC., Plaintiff,**

v.

**NEOTERIC COSMETICS, INC., Murad Skin Research Laboratories, Inc., Howard Murdad, M.D., Erno Laszlo Division, Chanel, Inc. and Clarins USA, Inc., Cosmair, Inc. Defendants.**

**Civil Action No. 96–227–JJF.**

United States District Court, D. Delaware.

March 31, 1997.

---

date. *See* D.I. 8, at 2. Dole's motion to amend is not case dispositive.

Thomas J. Allingham, II, Robert S. Saunders, Skadden, Arps, Slate, Meagher & Flom, Wilmington, DE, Constance S. Huttner, John L. Gariner, Stephanie J. Kamerow, Skadden, Arps, Slate, Meagher & Flom, New York City, Kevin M. McGovern, Brian T. Foley, of Mcgovern & Associates, Greenwich, CT, for Plaintiff.

Allen M. Terrell, Jr., Frederick L. Cottrell, III, Richards, Layton & Finger, Wilmington, DE, A. Thomas Kammer, Hoffman & Baron, Jericho, NY, Matthew B. Lehr, Jack B. Blumenfeld, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, Albert J. Breneisen, Kenyon & Kenyon, New York City, Richard Kelly, Jean–Paul Lavalleye, Oblon, Spivak, McClelland, Maier & Neustadt, P.C., Arling-

ton, VA, John Edward Tracey, Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, DE, James F. Burnett, Joanne Ceballos, Potter Anderson & Corroon, Wilmington, DE, Yosef J. Riemer, Sarah Slover, Kirkland & Ellis, New York City, David Wolf, Stanley Sacks, Wolf, Greenfield & Sacks, P.C., Boston, MA, Kent A. Jordan, Morris, James, Hitchens & Williams, Wilmington, DE, for Defendants.

## MEMORANDUM OPINION

FARNAN, Chief Judge.

## INTRODUCTION

Presently before the Court is a Motion to Dismiss filed by Defendant Dr. Howard Murad (D.I.23). Plaintiff TriStrata Technology, Inc. ("TTI"), a Delaware corporation, brought this patent infringement action against several defendants, including Murad Skin Research Laboratories, Inc. ("Murad Research"), a California corporation, and Dr. Howard Murad, the president and founder of Murad Research. TTI's Complaint alleges inducement of infringement and contributory infringement of several patents involving the use of alpha-hydroxy acids for the reduction of wrinkles. Although Murad Research has answered the Complaint, Dr. Murad has moved for a dismissal based on lack of personal jurisdiction. Because the Court finds that it lacks personal jurisdiction over Dr. Murad, the Court will grant his Motion to Dismiss.

1. On September 19, 1996, TTI amended its Complaint to add another Defendant. Following the filing of the Amended Complaint, Dr. Murad renewed his Motion to Dismiss. Because the allegations against Murad Research and Dr. Murad were unaffected by this amendment, this opinion will cite to the original Complaint. (D.I.1)

2. For purposes of further establishing the context of the suit underlying this Motion to Dismiss, the substantive allegations are:
 26. Each of the defendants is engaged in the manufacture, distribution and/or sale of cosmetic products comprising glycolic acid and/or topically effective salt thereof. These products are sold and promoted through national advertisements and other

## PROCEDURAL BACKGROUND

On May 2, 1996, TTI, a Delaware Corporation, filed a Complaint against several defendants, including Murad Research, a California corporation, and Dr. Howard Murad, president and founder of Murad Research, alleging patent infringement pursuant to 35 U.S.C. § 271 and 35 U.S.C. § 281, *et seq.* In response to this Complaint, Murad Research filed an Answer and Counterclaim. However, Dr. Howard Murad filed this Motion to Dismiss, based on lack of personal jurisdiction.[1]

## FACTS

As it relates to Dr. Murad, the Complaint in this action contains only one specific allegation, which is as follows:

10. Defendant Murad is an individual residing in the state of California. Murad is the president and 100% owner of Murad Inc. Murad is also the principal spokesperson for Murad Inc., and personally promotes its products in this District and throughout the United States through televised informercials [sic] and otherwise.

(D.I. 1 ¶ 10). The remaining allegations refer either to one of the five companies sued in this action or to all the Defendants collectively. As such, the substantive, allegations offer minimal assistance to the Court in determining whether jurisdiction exists over Dr. Murad.[2] However, a brief overview of Dr. Murad's activities, as alleged in various affidavits, is necessary to resolve the jurisdiction dispute presented by the instant Motion to Dismiss.

 marketing materials that encourage prospective customers to apply such products to their skin for the purpose of visibly reducing a human skin wrinkle and/or fine lines on the human skin—*i.e.,* to use their products in a manner that would infringe the '938 Patent.
 27. By virtue of these promotional activities, Defendants have been contributing, and continue to contribute, to and/or to induce the infringement of the '938 Patent in violation of 35 U.S.C. § 271.
(D.I.1, ¶¶ 26, 27). TTI's Complaint raises substantial similar allegations against the Defendants with respect to two other patents, the '677 and '171.

Dr. Murad, the only individual defendant named in TTI's actions for patent infringement, is a dermatologist whose practice is located exclusively in California. Dr. Murad is also a stockholder and officer of two California corporations, Murad Research and Howard Murad Video, Inc. ("Murad Video"). Collectively, these companies manufacture, sell and promote the sale of cosmetic products throughout the United States.

Murad Research, a defendant in this action, manufactures, sells and distributes glycolic acid cosmetics to beauty salons and distributors. According to a Dun and Bradstreet Report dated July, 16, 1996, Dr. Murad is the founder and president of Murad Research, and together with this wife, owns 100% of Murad Research's stock. Dr. Murad appears in a number of Murad Research's promotional materials, including sales brochures and infomercials about glycolic acid cosmetics, which have appeared throughout the United States, including Delaware. In these promotional materials, Dr. Murad personally appears and guarantees the Company's products. Additionally, these materials indicate that Dr. Murad has been involved in the research and development phases of the glycolic acid-based products produced by Murad Research.

The second company Dr. Murad is involved with is Murad Video, which is not a party to this action. Primarily, Murad Video produces and distributes "infomercials" for the purpose of promoting Murad Research's products and fills telephone sales orders for these products. Murad Research has agreements with national media companies such as NBC and TBS to broadcast these infomercials nationwide.

All of Dr. Murad's activities regarding the production, sale or advertisement of cosmetics have occurred through his capacity as an officer of these companies. As an individual, Dr. Murad is not licensed to practice medicine in Delaware. He owns no property or businesses in Delaware. HE is not an officer or director of any Delaware corporation, and is not a party to any agreements which are to be executed or performed in Delaware. Dr. Murad does not sell, and has never sold, cosmetics or any other products in Delaware.

Examining the current complaint in conjunction with these facts, the Court will proceed to determine if jurisdiction exists over Dr. Murad, in his individual capacity.

## DISCUSSION

 In order for personal jurisdiction to exist over a defendant, two requirements, one statutory and one constitutional, must be satisfied. First, in personam jurisdiction must exist under the applicable state long arm statute. Second, the exercise of jurisdiction must comport with the Due Process Clause of the Federal Constitution. "The party alleging jurisdiction has the burden of proving facts necessary to support jurisdiction by a preponderance of the evidence." *Akzona v. E.I. Du Pont De Nemours & Co.*, 607 F.Supp. 227, 236 (D.Del.1984); *Applied Biosystems, Inc. v. Cruachem, Ltd.,*, 772 F.Supp. 1458, 1462 (D.Del.1991). As applied here, TTI has the burden of establishing by a preponderance of the evidence that sufficient minimum contacts have occurred to justify exercising jurisdiction over Dr. Murad under the Delaware long arm statute and the Federal Constitution. *See Patterson v. F.B.I.*, 893 F.2d 595, 604 (3d Cir.), *cert, denied,* 498 U.S. 812, 111 S.Ct. 48, 112 L.Ed.2d 24 (1990).

### I. The Delaware Long Arm Statute

In relevant part, the Delaware long-arm statute provides:

(c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident or his personal representative, who in person or through an agent:

(1) Transacts any business or performs any character of work or service in the State; .

(3) Causes tortious injury *in* the State by an act or omission in this State . . .

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engaged in any other persistent course of conduct in the State or

derives substantial revenue from services, or things used or consumed in the State;
. . .

10 Del. C. § 3104.

### A. *Subsections (c)(1) and (c)(3): Specific Jurisdiction*

█ In order for a court to exercise jurisdiction under subsections (c)(1) and (c)(3), some act must actually occur in Delaware. *See Applied Biosystems*, 772 F.Supp. at 1465–68. In this case, any contacts that Dr. Murad may have with Delaware have occurred solely in connection with his corporation Murad Research. As such, this situation suggests the fiduciary shield doctrine.

█ The purpose of the fiduciary shield doctrine is to prohibit acts performed by an individual in the individual's capacity as a corporate employee from serving as the basis for personal jurisdiction over that individual. However, under *Mobil Oil Corp. v. Advanced Environmental Recycling Technologies*, 833 F.Supp. 437, 443 (D.Del.1993), this Court held that the fiduciary shield doctrine is not an absolute bar to personal jurisdiction over a corporate employee. Rather, the Court concluded that all forum related contacts, including those taken in an employee's fiduciary capacity, should be considered in determining whether to exercise personal jurisdiction over the individual. Therefore, the fact that Dr. Murad has only acted through his corporation is insufficient to bar jurisdiction.

While examining an individual's conduct, including his actions in his fiduciary capacity, this Court must still be mindful of the requirement of subsection (c)(1) and (c)(3). Thus, the employee's acts as a fiduciary must still occur in Delaware.

According to the Complaint, there are two alleged actions by Dr. Murad which must be considered in determining whether jurisdiction exists. First, the Complaint alleges that Dr. Murad is the "principal spokesperson" for Murad Research and "personally pro-motes" Murad Research's products throughout the United States via televised infomercials and other promotional materials. (D.I. 1 ¶ 10). Second, the Complaint alleges that Dr. Murad is president and 100% stockholder of Murad Research. (D.I. 1 ¶ 10). However, under the facts alleged in this case, these actions are insufficient to establish personal jurisdiction.

█ In *Applied Biosystems*, the Court held that advertising in national magazines is insufficient to qualify as transacting business or causing tortious injury by an act or omission in Delaware for purposes of Subsections (c)(1) and (c)(3), unless it is shown that the advertising is part of a "sustained promotion campaign directed at Delaware." 772 F.Supp. at 1465–68. The infomercials, ads and brochures at issue in this case are analogous to the advertisements in *Applied Biosystems*. Therefore, absent proof of a promotional campaign directed at Delaware consumers, Dr. Murad's appearances and guarantees in these promotional devices are insufficient to establish personal jurisdiction over him.[3]

█ Moreover, absent actual conduct in Delaware, Dr. Murad's position as president, stockholder and researcher for Murad Research would be insufficient to establish jurisdiction. This conclusion is consistent with the Court's rationale in *Mobil*. In *Mobil*, the Court evaluated personal jurisdiction under Subsection (c)(3) as it pertained to three employees of *Mobil*. In finding jurisdiction over two of the employees, the Court focused on the actions the parties committed in Delaware, and not on the mere fact that they were employed by a company who was subject to Delaware's jurisdiction. For example, the Court exercised personal jurisdiction over Mobil's General Counsel because he directed the filing of Mobil's declaratory judgment action and attended a deposition in Delaware related to the litigation. In declining to exercise jurisdiction over a Mobil

---

**3.** Although an affidavit from TTI's counsel states that Murad Research is involved in "an ongoing point-of-purchase sales campaign in Delaware which specifically targets Delaware consumers," this is not alleged in the Complaint or elsewhere supported. Moreover, even if Murad Research specifically targets Delaware, this may be insuffi-cient to establish personal jurisdiction over Dr. Murad, individually. Absent proof that Dr. Murad has performed acts, in his fiduciary or individual capacity, in Delaware, the fact that Murad Research may be subject to jurisdiction based upon its advertising programs would be insufficient to establish jurisdiction over Dr. Murad.

employee, the Court emphasized that the employee had not performed any action in connection with the subject matter of the litigation in Delaware.

Aside from his involvement in the promotional materials, which has already been established to be inadequate for jurisdiction purposes, Dr. Murad has not performed any actions in Delaware for at least 30 years. (D.I. 24 ¶ 3). He owns no property in Delaware, is not an officer or director of any Delaware company and is not a party to any contract to be performed in Delaware. (D.I. 24 ¶ 4). Indeed, there is no allegation or evidence that Dr. Murad performed any activity in Delaware, in his fiduciary capacity, or otherwise, that would be sufficient to establish personal jurisdiction. Therefore, as applied to Dr. Murad, the Court concludes that the jurisdictional prerequisite required under subsections (c)(1) and (a)(3) has not been satisfied.

B. *Subsection (c)(4): General Jurisdiction*

■ Unlike Subsection (c)(1) and (c)(3), Subsection (c)(4) provides for general jurisdiction. Although, this section authorizes jurisdiction even when the tortious acts and the injury occurred outside of Delaware, the defendant or its agent must still be "generally present" in the state. See 772 F.Supp. at 1468. Under the words of the statute, this "general presence" requires that the defendant or agent "regularly does or solicits business, engages in any other persistent course of conduct in the State, or derives substantial revenue from services, or things consumed in the State." While seemingly broad in its language, the standard for general jurisdiction is high in practice and not often met. *See Sears, Roebuck & Co. v. Sears plc,* 744 F.Supp. 1297, 1304 (D.Del.1990) (citations omitted).

4. The Court acknowledge that TTI has filed a Motion for Leave to File Second Amended Complaint. (D.I.64). Without expressing an opinion as to the merits of that motion, the Court further acknowledges that the proposed amendments directly affect the issue of whether jurisdiction exists over Dr. Murad. Particularly, the Second Amended Complaint alleges the theory that Murad Research is actually an agent for Dr. Murad. While adopted elsewhere, this "reverse agency"

As discussed above, Dr. Murad, as an individual, has not engaged in any conduct in Delaware, let alone the high standard of a "persistent course of conduct" required under Subsection (c)(4). In addition, at this stage, whether Murad Research has or has not reached this threshold is of no consequence. While TTI argues that Murad Research should be considered Dr. Murad's agent for purposes of jurisdiction, the Complaint makes no such allegations. Thus, at this time, the Court refuses to inquire into this theory or its applicability to this case.[4] Therefore, based upon the allegations in the Complaint and the facts provided in the accompanying affidavits, the Court concludes that jurisdiction over Dr. Murad pursuant to Subsection (c)(4) has not been established.

Because the Court has concluded that Dr. Murad is not subject to this Court's jurisdiction under Delaware's long arm statute, the Court will not undertake the due process inquiry of whether Dr. Murad has sufficient minimum contacts with Delaware to satisfy "traditional notions of fair play and substantial justice." *See International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

II. **Whether TTI Should Be Permitted to Take Discovery on the Jurisdiction Question**

■ While discovery under the Federal Rules of Civil Procedure is broad in scope and generally freely given, the district court also has broad discretion in deciding discovery issues. While numerous cases have permitted a plaintiff to take additional discovery to establish jurisdiction, the circumstances of the instant case require a different approach. Here, despite receiving an extension of time to file its Answer brief from Dr. Murad, TTI conducted no discovery on the jurisdictional

theory, which makes the corporation an agent for the individual, is an issue of first impression in Delaware. *See e.g. Kinetic Instruments, Inc. v. Lares,* 802 F.Supp. 976, 983–85 (S.D.N.Y.1992). Therefore, absent further briefing on the propriety of adopting this doctrine, the Court will not consider it. Because the instant Motion to Dismiss was filed in response to the Complaint (and Amended Complaint) only, this Court will not consider the proposed amendments.

issue. Instead, TTI relied on its imprecise allegations in the Complaint and on the limited information it provided by affidavit. Because TTI had ample opportunity to conduct the discovery it now seeks, the Court will deny TTI's request to take additional discovery to elaborate on the theories already discussed in this opinion. *See Naartex Consulting Corporation v. Watt*, 722 F.2d 779 (D.C.Cir.1983) (affirming district court's decision to deny discovery to establish personal jurisdiction where pleadings contained no allegation of specific fact that could establish requisite contacts with the jurisdiction and where plaintiff was put on notice that jurisdiction would be challenged prior to dismissal of case).

## CONCLUSION

For the reasons discussed, Dr. Murad's Motion to Dismiss (D.I.23) will be granted. TTI's Motion for Leave to File a Sur–Reply Breif in Opposition to Dr. Murad's Motion to Dismiss (D.I.47) will be denied as moot.

An appropriate order will be entered.