# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

M. DENISE TOLLIVER,          )
                             )
          Plaintiff,         )
                             )
     v.                      )          C.A. No. K21C-06-040 NEP
                             )
QLARANT QUALITY SOLUTIONS, INC.,)
and RONALD G. FORSYTHE JR. and )
DEBORAH KELLER in their      )
individual and official capacities, )
                             )
          Defendants.        )

Submitted: August 15, 2022
Decided: November 21, 2022

## MEMORANDUM OPINION AND ORDER

*Upon Plaintiff's Motion for Default Judgment*
**DENIED**

*Upon Individual Defendants' Motion to Dismiss for Lack of Personal Jurisdiction*
**GRANTED**

*Upon Defendants' Motion to Dismiss for Failure to State a Claim*
**GRANTED**

M. Denise Tolliver, Camden, Delaware, *Pro Se Plaintiff.*

Tiffany R. Hubbard, Esquire (*Pro Hac Vice*), Pamela Moore, Esquire (*Pro Hac Vice*), McCarter & English, LLP, Hartford, Connecticut, and Chelsea A. Botsch, Esquire, McCarter & English, LLP, Wilmington, Delaware, *Attorneys for Defendants*.

**Primos, J.**

Before this Court are two pending motions in an action brought by Denise Tolliver (hereinafter "Plaintiff"), who is self-represented, against Qlarant Quality Solutions, Inc., and Donald G. Forsythe and Deborah Keller (hereinafter "Defendants"). Plaintiff moves for default judgment pursuant to Superior Court Civil Rule 55(b)(2). Defendants move to dismiss the action 1) with respect to Forsythe and Keller (hereinafter the "individual defendants") pursuant to Rule 12(b)(2) for lack of personal jurisdiction; and 2) in its entirety pursuant to Rule 12(b)(6), asserting that Plaintiff fails to state a claim for which relief can be granted. The 12(b)(6) motion argues that Plaintiff's claims are barred by *res judicata* and time-barred, and that Plaintiff has failed to exhaust her administrative remedies and has failed to state a claim. For the reasons set forth below, Plaintiff's motion for default judgment is **DENIED**, and Defendants' motions to dismiss for lack of personal jurisdiction and failure to state a claim are **GRANTED**.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.  Plaintiff's Employment and Termination

The facts in this section are as alleged in the Complaint, accepting all of Plaintiff's well-pleaded allegations as true in light of Defendants' motion to dismiss.

On October 7, 2013, Plaintiff was hired by Qlarant Quality Solutions, Inc. (hereinafter "Qlarant"), then operating under the name Delmarva Foundation for Medical Care.[1] Qlarant was a vendor for the State of Delaware, with operations in both Delaware and Maryland, and was funded in part by a two-year grant at the time of Plaintiff's hiring.[2] She was made aware of the two-year grant period and led to believe that her employment contract would last for the entire two-year grant term.[3]

---

[1] Compl. (D.I. 1) at 3, ¶ 10.
[2] *Id.* at 2, ¶ 5
[3] *Id.* at 6, ¶ 23.

On February 18, 2014, Plaintiff requested mental health accommodations "for cause under well documented, persistent hostile and unsafe work conditions" at her workplace in New Castle County.[4] It is unclear what accommodations were sought or whether they were granted. On March 25, 2014, she requested that she be transferred from the New Castle office to a location in Kent County as a further accommodation for her disability.[5] Both accommodation requests were directed to Deborah Keller, Qlarant's Human Resources Vice President.[6]

On May 12, 2014, Plaintiff's employment with Qlarant was terminated via a letter sent by Keller.[7] The letter included an offer of payment in exchange for Plaintiff's agreement not to file any discrimination claims under the Delaware Discrimination in Employment Act ("DDEA"), the Delaware Persons with Disabilities Employment Protections Act ("DPDEPA"), the Equal Pay Act, and the Delaware Unemployment Compensation Act.[8]

Plaintiff also learned that, as of that very day, there was an open position in the Kent County office for which she believed herself to be qualified.[9] The next day, she requested reinstatement of her employment at a salary commensurate to the vacant "Kent County lead position."[10] On May 22, 2014, her request for reinstatement was denied in an email explaining that "[i]n light of contract reductions by our client, the State of Delaware, and our overall business conditions, your request for reinstatement is denied at this time."[11]

---

[4] *Id.* at 4, ¶ 13.
[5] *Id.* ¶ 14.
[6] *Id.* at 3, ¶ 8, and 4, ¶¶ 13–14.
[7] *Id.* ¶ 15.
[8] *Id.* at 5, ¶ 19.
[9] *Id.* at 4, ¶ 15.
[10] *Id.* ¶ 15–16.
[11] *Id.* at 4, ¶ 16, and 5, ¶ 18. Plaintiff asserts that it is "undisputed" that these stated reasons were "pretext." However, at this stage Defendants have yet to file an answer admitting or denying the allegations, and there are insufficient supporting factual allegations for the Court to draw a

## II. Administrative Process

On October 21, 2014, Plaintiff filed a Charge of Discrimination alleging discrimination based on race, sex, age, and "equal pay."[12] The Charge of Discrimination references the February 2014 request for disability accommodation and the May 2014 termination of employment, but not the March 2014 accommodation request or the May 2014 request for reinstatement. On March 7, 2018, the Delaware Department of Labor issued a Final Determination and Right to Sue Notice, dismissing the administrative action "without a specific finding" and granting Plaintiff the right to sue, pursuant to 19 *Del. C.* § 712.[13]

## III. *Tolliver I*

In November of 2017, Plaintiff filed a complaint in this Court against Qlarant and Terri Daly (a human resources employee at Qlarant). That complaint included four counts: 1) breach of the implied covenant of good faith and fair dealing; 2) violation of 19 *Del. C.* § 1108(3); 3) defamation; and 4) disability discrimination and retaliation.[14] The defendants in that action removed it to the United States District Court for the District of Delaware (hereinafter the "District Court").[15] The District

---

reasonable inference that the reasons given were pretextual. *See In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) ("[A] trial court is required to accept only those 'reasonable inferences that logically flow from the face of the complaint.'" (quoting *Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001))).

[12] Defs.' Opening Br. in Support of their Mot. to Dismiss. the Compl. (D.I. 26) [hereinafter "Defs.' Opening Br."] Ex. E (Charge of Discrimination). The Charge of Discrimination was originally filed with the Maryland Commission of Civil Rights due to a technical error, but this error was later corrected, and the Charge of Discrimination was correctly filed with the Delaware Department of Labor. *See Tolliver v. Delmarva Found. for Med. Care*, 2018 WL 3735889, at *5 (D. Del. Aug. 3, 2018).

[13] *Id.*

[14] Defs.' Opening Br. Ex. C.

[15] *Tolliver*, 2018 WL 3735889, at *1. The Court takes judicial notice of the contents of the pleadings, exhibits, and court decisions from this action pursuant to Delaware Rule of Evidence 201(b)(2) (authorizing judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

Court dismissed the first three counts as time-barred.[16]  The disability and retaliation claims were dismissed with leave to amend.[17]  Plaintiff filed an amended complaint, which the District Court dismissed for failing to state a claim for disability discrimination and retaliation, but with leave to amend once more to state, *inter alia*, the disability at issue and the accommodations sought.[18]

The Second Amended Complaint brought two counts, failure to accommodate Plaintiff's disability and retaliation for protected activities (i.e., retaliating against Plaintiff for requesting accommodations), under both the Americans with Disabilities Act ("ADA") and the DDEA.[19]  However, the District Court liberally construed the Second Amended Complaint as raising claims under the DPDEPA.[20] The District Court dismissed with prejudice the discrimination claim predicated on Plaintiff's February 2014 accommodation request but dismissed "without prejudice the March and May 2014 accommodation claim seeking a transfer as those claims have not been administratively exhausted."[21]  As to the retaliation claims, the District Court dismissed with prejudice the retaliation claims stemming from the February 2014 and May 2014 alleged accommodation requests, and dismissed "the remaining retaliation claim . . . without prejudice for failure to exhaust administrative remedies."[22]

That round of litigation (collectively "*Tolliver I*"), ended with the District Court's denial of Plaintiff's motion to vacate judgment and reopen the case on

---

[16] *Tolliver*, 2018 WL 3735889, at *5.
[17] *Id.* at *6–7.
[18] *Tolliver v. Delmarva Found. for Med. Care*, 2019 WL 4169881, at *4 (D. Del. Sept. 3, 2019).
[19] *Tolliver v. Delmarva Found. for Med. Care*, 2020 WL 4335521, at *1 (D. Del. July 28, 2020).
[20] *Id.* at *3.
[21] *Id.* at *6.
[22] *Id.* at *8.

January 19, 2021.[23]  To recap, *Tolliver I* resulted in the dismissal with prejudice of the following claims relevant to this proceeding:

(1) Breach of the implied covenant of good faith and fair dealing;

(2) Violation of 19 *Del. C.* § 1108(3);

(3) Discrimination claims stemming from Plaintiff's February 2014 accommodation request; and

(4) Retaliation claims stemming from accommodation requests in February 2014 and May 2014.

The claims dismissed without prejudice, for failure to exhaust administrative remedies, are:

(1) Discrimination claims resulting from the March and May 2014 accommodation requests; and

(2) Retaliation claims arising from Plaintiff's March 2014 telephone conference discussing worker's compensation and ADA accommodations.

## IV.   *Tolliver II*

Just over six months after the end of *Tolliver I,* Plaintiff initiated this action ("*Tolliver II*") by filing a complaint in this Court on June 28, 2021.[24]  In a complaint bearing remarkable resemblance to the original complaint in *Tolliver I,* Plaintiff brings three counts against Defendants: 1) breach of the implied covenant of good faith and fair dealing; 2) violation of 19 *Del. C.* § 1108(3); and 3) "Equal Pay, DDEA and DPDEPA Disability and Retaliation."[25]  *Tolliver II* differed from *Tolliver I* by bringing claims against individual defendants Forsythe and Keller, though not against Daly.

---

[23] *Tolliver v. Delmarva Found. for Med. Care*, 2021 WL 184403 (D. Del. Jan. 19, 2021).
[24] Compl. (D.I. 1).
[25] *Id.*

Certified mail receipts show that Forsythe, Keller, and Qlarant's Board Chair were served the complaint on July 2, 2021, and that Qlarant's registered agent was served on July 8, 2021.[26] On July 21, 2021, counsel for Defendants entered an appearance and filed a notice of removal to federal court.[27] However, the District Court construed the "Equal Pay" claim as a state law claim under the Delaware Wage Payment and Collection Act rather than the federal Equal Pay Act and, thus finding no basis for federal subject matter jurisdiction, remanded the case back to this Court on March 21, 2022.[28] The District Court dismissed as moot all other pending motions in that court,[29] which included Plaintiff's motion for default judgment and Defendants' motion to dismiss.[30]

Two days later, Defendants sent a letter to the Court indicating Defendants' intention to renew the motion to dismiss filed in the District Court.[31] Attached to the letter was a proposed briefing schedule.[32] Plaintiff opposed the proposed schedule, requesting more time to prepare her response and to attempt to obtain counsel.[33] At an office conference held on April 12, 2022, counsel for Defendants represented that the purpose of the proposed briefing schedule was "to have something in place for everyone to be on the same page, especially with [the case] being remanded and it being [a] sort of gray area [] when the filings would begin."[34]

---

[26] Aff. of M. Denise Tolliver (D.I. 3).

[27] Entry of Appearance (D.I. 4); Notice of Filing of Notice of Removal (D.I. 5).

[28] Certified Mem. Op. and a Certified Order from District Ct. Remanding the Case Back to Superior Ct. (D.I. 6) [hereinafter "Remand Order"] at 4–6.

[29] *Id.* at 6.

[30] *Id.* at 1.

[31] Letter (D.I. 7) at 1.

[32] Proposed Order on Briefing Schedule and Page Limitation for Defs.' Mot. to Dismiss Pl.'s Compl. (D.I. 8).

[33] Pl.'s Mot. to Strike and/or Request to Amend Proposed Scheduling Order (D.I. 10).

[34] Tr. of Zoom Conference (D.I. 24) at 4:23–5:3.

The Court set a briefing schedule on Plaintiff's motion for default judgment and Defendants' motion to dismiss.[35] Plaintiff filed her motion for default judgment on April 14, 2022.[36] Defendants filed their response on May 31, 2022,[37] and Plaintiff replied on June 6, 2022.[38] Defendants filed their motion to dismiss and opening brief on April 26, 2022, asserting both lack of personal jurisdiction over the individual defendants pursuant to Superior Court Civil Rule 12(b)(2) and failure to state a claim under Rule 12(b)(6).[39] Plaintiff filed a response on May 2, 2022,[40] and Defendants replied on July 21, 2022.[41] Both matters were submitted to chambers for review on August 15, 2022.

## DISCUSSION

### I.    Motion for Default Judgment

Superior Court Rule 55(b) provides that when a defendant "has failed to appear, plead or otherwise defend as provided by these Rules, and that fact is made to appear, judgment by default may be entered . . ."[42] Where, as here, the party has entered an appearance, default judgment may only be granted on application to the Court.[43] A trial court exercises discretion when ruling on a motion for default judgment and generally grants it only on "those occasions where there has been a willful or conscious disregard of the rules of the court."[44]

---

[35] Order (D.I. 19).
[36] J. by Default Mot. (D.I. 20) [hereinafter "Default Mot."].
[37] Defs.' Resp. to Pl.'s Mot. for Default J. (D.I. 32).
[38] Pl. Resp. to Defs.' Default J. Resp. (D.I. 33).
[39] Defs.' Mot. to Dismiss (D.I. 25); Defs.' Opening Br. (D.I. 26).
[40] Pl.'s Resp. and Quash Mot. to Defs.' Dismiss Mot. (D.I. 27) [hereinafter "Pl.'s Resp."].
[41] Defs.' Reply in Support of Defs.' Mot. to Dismiss (D.I. 36).
[42] Super. Ct. Civ. R. 55(b).
[43] Super. Ct. Civ. R. 55(b)(2).
[44] *Long v. Jennings*, 2021 WL 2134854, at *1 (Del. Super. May 25, 2021) (quoting *Pinkett ex rel. Britt v. Nationwide Mut. Ins. Co.*, 832 A.2d 747, 748–49 (Del. Super. 2003)).

Plaintiff argues that default judgment is appropriate here because Defendants removed the action to federal court before filing an answer or motion in response to her complaint.[45] The Delaware Superior Court Rules of Civil Procedure do not expressly provide for removal of actions to federal court. Plaintiff is thus correct in a narrow sense that Defendants did not file "an answer or appropriate motion" within the 20 days provided for in Superior Court Civil Rule 12.[46] However, removal of an action to federal court deprives the state court of jurisdiction over that action.[47] Since no action can be taken in the state court while it is without jurisdiction, removal necessarily pauses the time in which the defendant must respond to the complaint in a state court.[48] Thus, at least one day remained to answer after the case was remanded on March 21, 2022 (nineteen days having elapsed between service of process on the individual defendants on July 2, 2021, and removal of the case on July 21, 2021).[49] However, instead of filing their motion to dismiss in this court

---

[45] Default Mot. at 2–3.

[46] *See Pinkett*, 832 A.2d at 750 ("The defendant's failure to file an answer or appropriate motion within the required time is a failure to defend which exposes it to default judgment under Rule 55.").

[47] *See* 28 U.S.C. § 1446(d) ("Promptly after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal and **the State court shall proceed no further unless and until the case is remanded**.") (emphasis supplied); *Limehouse v. Hulsey*, 744 S.E.2d 566, 573 (S.C. 2013) ("Removal proceedings impact the jurisdiction of the state court in that removal of a state case to federal court divests the state court of jurisdiction."); *Lewis v. C.J. Langenfelder & Son, Jr., Inc.*, 587 S.E.2d 697, 700 (Va. 2003) ("After compliance with the removal statute, the jurisdiction of the state court is suspended until there has been a remand.") (cleaned up).

[48] *See e.g. Ferrell v. Young*, 746 S.E.2d 167, 170 (Ga. Ct. App. 2013) ("When the case was removed, only a portion of the 30–day period for filing an answer in the Superior Court had expired. Until the Superior Court resumed jurisdiction pursuant to the remand from the District Court, no responsive pleadings could be filed in the Superior Court, and the running of the 30–day period for filing an answer in the Superior Court was suspended.").

[49] Plaintiff states, incorrectly, that Defendants were required to respond within 20 days of the filing of her Complaint on June 28, 2021. *See* Default Mot. at 3, ¶ 14. However, the time to file a responsive pleading is within 20 days of service of process, which in this case, means within 20 days of the date on the return receipts showing proof of mailing. *See* Super. Ct. Civ. R. 12(a) ("A defendant shall serve an answer within 20 days after service of process, complaint and affidavit, if

9

within that time, Defendants sent a letter to the Court with a proposed briefing schedule on March 23, 2022.

Assuming *arguendo* that default judgment is available on these facts, the Court perceives no willful or conscious disregard for the rules of the Court.[50] To the contrary, Defendants quickly took steps to resolve any "gray area" as to the filing timeline after the remand to this Court.[51] Moreover, Defendants entered an appearance in this Court within 20 days of service of process, filed a timely notice of removal to federal court followed by a motion to dismiss in that court, and, within two days of remand, submitted a proposed briefing schedule to present that motion to this Court. The Court then set a briefing schedule with which Defendants complied. In the Court's discretion, Plaintiff's motion for default judgment is **DENIED**.

## II. Motion to Dismiss for Lack of Personal Jurisdiction

Defendants assert that this Court lacks personal jurisdiction over the individual defendants, both residents of Maryland at the time this action was filed, and moves to dismiss with respect to them pursuant to Superior Court Civil Rule 12(b)(2). A court must address a defendant's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction before addressing the merits of a Rule 12(b)(6) motion to dismiss.[52]

---

any, upon that defendant . . ."); 10 *Del. C.* § 3104(g) ("If service is made [by mail to an out of state resident], the time in which defendant shall serve an answer shall be computed from the date of the mailing which is the subject of the return receipt or other official proof of delivery or the notation of refusal of delivery.").

[50] *See Long*, 2021 WL 2134854, at *2 (denying default judgment where the defendant had submitted an untimely response and motion to dismiss but "nothing indicate[d] to the Court that the [defendant] has willfully or consciously disregard the rules of the Court").

[51] Tr. of Zoom Conference at 4:23–5:3.

[52] *See Branson v. Exide Elecs. Corp.*, 625 A.2d 267, 268–69 (Del. 1993) ("[T]he Court of Chancery should have decided the personal jurisdictional challenge regarding the individual defendants, raised by Exide's motion to dismiss, prior to addressing the substantive aspect of that motion with respect to all defendants."); *Hartsel v. Vanguard Grp., Inc.,* 2011 WL 2421003, at *6 (Del. Ch.

On a motion to dismiss for lack of personal jurisdiction, the burden is on the plaintiff to make a prima facie showing that the exercise of personal jurisdiction over the nonresident defendants is authorized by Delaware's long-arm statute, 10 *Del. C.* § 3104, and is consistent with due process.[53] "The Court must accept the plaintiff's allegations as true and draw all reasonable inferences in favor of the plaintiff."[54] The Court "may consider extra-pleading material, such as affidavits and briefs of the parties, to supplement the Complaint and aid in establishing jurisdiction."[55] While a pro se plaintiff's pleadings may be construed liberally, a pro se plaintiff still bears the burden of alleging specific facts sufficient to establish personal jurisdiction with respect to each defendant.[56]

10 *Del. C.* § 3104(c) identifies six scenarios in which Delaware Courts may exercise personal jurisdiction over a nonresident defendant. Those are that the nonresident:

> (1) Transacts any business or performs any character of work or service in the State;
>
> (2) Contracts to supply services or things in this State;
>
> (3) Causes tortious injury in the State by an act or omission in this State;
>
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits

June 15, 2011) ("Before considering the merits of Defendants' motion to dismiss under Rule 12(b)(6), the Court first must address the Individual Defendants' motions to dismiss for lack of personal jurisdiction under Rule 12(b)(2)."), *aff'd*, 38 A.3d 1254 (Del. 2012) (TABLE).

[53] *Oliver v. Galerman*, 2022 WL 287907, at *1 (Del. Super. Jan. 31, 2022).

[54] *Id.* (citing *Boone v. Oy Partek Ab*, 724 A.2d 1150, 1155 (Del. Super. 1997)).

[55] *Munoz v. Vazquez-Cifuentez*, 2019 WL 669935, at *2 (Del. Super. Feb. 18, 2019).

[56] *See Oliver*, 2022 WL 287907, at *2 ("The same rules . . . still apply to a *pro se* Plaintiff; this Court will accommodate them only to the extent that the substantive rights of the opposing party are not affected."); *Thomas v. Nationstar Mortgage, LLC*, 2015 WL 5766775, at *2 (Del. Ch. Sept. 18, 2015) ("[T]his leniency does not extend to the constitutional requirements of personal jurisdiction."), *adopted*, 2015 WL 5786135 (Del. Ch. 2015); *Draper v. Med. Ctr. of Delaware*, 767 A.2d 796, 799 (Del. 2001) ("There is no different set of rules for *pro se* plaintiffs, and the trial court should not sacrifice the orderly and efficient administration of justice to accommodate an unrepresented plaintiff.").

business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;

(5) Has an interest in, uses or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

Plaintiff has made no argument as to which of the above subsections she believes applies to the individual defendants. The only specific mention of Ronald Forsythe in the complaint is that he is the Chief Executive Officer at Qlarant and is therefore "responsible for all aspects of personnel supervision and for regulatory contract compliance" under Delaware law.[57] The complaint is more specific with respect to Deborah Keller. It first identifies her as the Human Resources Vice President at Qlarant and identifies her as Qlarant's "employment decision-maker."[58] Plaintiff asserts that she "requested disability accommodations" from Keller, specifically that she should be allowed to relocate her workplace to Qlarant's office in Kent County.[59] Plaintiff also alleges that her "employment was terminated in a letter by Keller while a Kent County lead position became vacant on [the] same day."[60] Beyond the allegations in the Complaint, the only additional evidence offered by Plaintiff to support the exercise of personal jurisdiction by this Court is a citation to a Professional Services Agreement Clause that has no readily apparent bearing on the issue of personal jurisdiction.[61]

Defendants argue that these allegations cannot establish personal jurisdiction over the individual defendants because they refer exclusively to actions taken in their

---

[57] Compl. at 3 ¶ 8.
[58] *Id.* ¶ 9.
[59] *Id.* at 4, ¶ 14.
[60] *Id.* ¶ 15.
[61] *See* Pl.'s Resp. at 5, ¶ 23 and Ex. P0007 (Professional Services Agreement 4.9. Contractor).

respective capacities as employees of Qlarant. This judicially created principle, referred to as the fiduciary shield doctrine, was first recognized by this Court in *Plummer & Co. Realtors v. Crisafi*.[62] In its broadest form, the fiduciary shield doctrine would completely "insulate employees and officers of a corporation from being sued in the courts of a jurisdiction where their sole contacts have been on behalf of their corporation."[63] The rationale underpinning the doctrine is that it is "unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer."[64]

However, the soundness of a broad fiduciary shield doctrine has been questioned under Delaware law. In *Mobil Oil Corp. v. Advanced Environmental Recycling Technologies, Inc.*, a federal court applying Delaware law opined that "the Supreme Court of Delaware would not recognize the fiduciary shield as an absolute bar to personal jurisdiction over a corporate employee."[65] The court reasoned that the out-of-state authorities relied on in *Plummer* had been called into question in their own jurisdictions and that they resulted in a construction that "would run counter to the expansive interpretation that Delaware courts have consistently

---

[62] 533 A.2d 1242, 1246 (Del. Super. 1987).

[63] *Id.*; *see also Kelly v. McKesson HBOC, Inc.,* 2002 WL 88939, at *17 n.70 (Del. Super. Jan. 17, 2002) ("This [fiduciary shield] doctrine is judicially created, and immunizes acts performed by an individual in the individual's capacity as a corporate employee from serving as the foundation for the exercise of personal jurisdiction over that individual."); *Mktg. Products Mgmt., LLC v. HealthandBeautyDirect.com, Inc.*, 2004 WL 249581, at *3 (Del. Super. Jan. 28, 2004) ("The fiduciary shield doctrine prohibits acts performed by an individual, in his capacity as a corporate officer or employee, from serving as the basis for personal jurisdiction over that individual.").

[64] *Plummer*, 533 A.2d at 1246 (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 902 (2d Cir. 1981)).

[65] 833 F. Supp. 437, 443 (D. Del. 1993).

applied to Delaware's long-arm statute."[66]  This split of authority continues,[67] and the Delaware Supreme Court has yet to clarify the viability or scope of the fiduciary shield doctrine.  However, this Court need not decide here the exact scope of the fiduciary shield doctrine in order to resolve this motion.  Even if Delaware law does not recognize an absolute jurisdictional bar for employee-defendants, personal jurisdiction over an individual employee must still be based on specific actions taken by that individual, either in an individual or fiduciary capacity, that would place that individual within the reach of Delaware's long-arm statute.[68]

Turning back to the statute, the only categories that might be relevant to the facts alleged are Section 3104(c)(1), i.e., transacting business or performing work in Delaware, or (c)(3), i.e., causing tortious injury by an act or omission in Delaware. In order to establish personal jurisdiction under either (c)(1) or (c)(3), a plaintiff is required to allege conduct, whether an act or an omission, by the nonresident that occurred *in the state* of Delaware.[69]  Simply holding a position in a company that operates in Delaware is insufficient to establish jurisdiction under these provisions.[70]

---

[66] *Id.* at 441–43.

[67] *See EBP Lifestyle Brands Holdings, Inc. v. Boulbain*, 2017 WL 3328363, at \*5 and n.23 (Del. Ch. Aug. 4, 2017) ("[C]onflicting authority provides reason to question whether *vel non* the fiduciary shield doctrine is recognized in Delaware law.").

[68] *See Reach & Associates, P.C. v. Dencer*, 269 F. Supp. 2d 497, 504 (D. Del. 2003) (following *Mobil Oil* but clarifying that "in order for any act to be relevant in a personal jurisdiction analysis under Subsections (c)(1) or (c)(3) [of Delaware's long-arm statute], the individual's acts, even as a fiduciary, must occur in Delaware."); *EBP Lifestyle Brands*, 2017 WL 3328363, at \*5 (declining to reach the question of "whether the fiduciary shield doctrine is (or ever was) Delaware law" because the alleged transactions were insufficient to establish specific jurisdiction under the long-arm statute).

[69] *TriStrata Technology, Inc. v. Neoteric Cosmetics, Inc.*, 961 F.Supp. 686, 690 (D. Del. 1997) ("While examining an individual's conduct, including his actions in his fiduciary capacity, this Court must still be mindful of the requirement of subsection (c)(1) and (c)(3). Thus, the employee's acts as a fiduciary must still occur in Delaware.").

[70] *See id.* ("[A]bsent actual conduct in Delaware, Dr. Murad's position as president, stockholder and researcher for Murad Research would be insufficient to establish jurisdiction."); *Kelly*, 2002 WL 88939, at \*17 ("Absent actual conduct in Delaware, Hawkins' positions at McKesson, or McKesson HBOC, are insufficient to establish jurisdiction. Because Hawkins did not have any

Thus, the paragraphs in the complaint explaining Keller and Forsythe's positions and authority within Qlarant cannot serve as a basis for the exercise of personal jurisdiction over them as individuals. Since this is the only allegation regarding Forsythe, the inquiry ends there with respect to him.

While the allegations regarding Keller are more specific, they are not specific enough to establish personal jurisdiction. The complaint states that Plaintiff requested disability accommodations from Keller but says nothing about the mode of communication by which that request was made or where any conversations took place.[71] The complaint also states that Keller, presumably in her capacity as Human Resources Vice President, sent a letter terminating Plaintiff's employment. Without some indication that Keller committed any act or omission within the state of Delaware, rather than in Qlarant offices located in her home state of Maryland, Plaintiff has failed to establish a prima facie case that Keller worked in Delaware during the relevant time period or that she caused tortious injury by an act or omission in this state.[72] Thus, Plaintiff's allegations are insufficient to support the exercise of personal jurisdiction in this case.

Accordingly, the motion to dismiss for lack of personal jurisdiction is **GRANTED** based on the long-arm statute, without reaching the due process

---

contacts in Delaware, this Court will not establish personal jurisdiction on the mere fact that he was employed by a Delaware corporation.") (internal citation omitted).

[71] It seems a reasonable inference that it was the same March 25, 2014, telephone conference call alleged in *Tolliver I,* though in that action the only participant in the call mentioned in the complaint was Terri Daly. Defs.' Opening Br. Ex. E at 5.

[72] Plaintiff has not requested leave to amend her complaint or the opportunity to conduct jurisdictional discovery. In any event, the Court finds that either would be futile because the claims against the individual defendants would fail to survive a motion to dismiss for substantially the same reasons set forth in Part III of this opinion.

analysis. The Court will thus consider the motion to dismiss for failure to state a claim with respect to Qlarant only.[73]

## III. Motion to Dismiss for Failure to State a Claim

Defendants argue that the Complaint fails to state a claim upon which relief can be granted and move to dismiss pursuant to Superior Court Rule 12(b)(6). When the Court considers a Rule 12(b)(6) motion, "(i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are well-pleaded if they give the opposing party notice of the claim; (iii) the [c]ourt must draw all reasonable inferences in favor of the non-moving party; and [(iv)] dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[74] The Court looks to all allegations in the complaint and documents referenced therein, and may also "take judicial notice of 'matters that are not subject to reasonable dispute.'"[75]

### A. *Res judicata*

Defendant argues that most of Plaintiff's claims in this action are barred under the doctrine of *res judicata* because of the District Court's disposition of the same or similar claims in *Tolliver I*. "*Res judicata* exists to provide a definite end to litigation, prevent vexatious litigation, and promote judicial economy."[76] The doctrine of *res judicata* has five elements under Delaware law. The party invoking

---

[73] *See Branson*, 625 A.2d at 269 ("A court without personal jurisdiction has no power to dismiss a complaint for failure to state a claim.").

[74] *Hammer v. Howard*, 2021 WL 4935019, at *2 (Del. Super. Oct. 22, 2021) (quoting *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

[75] *Id.* (quoting *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 169 (Del. 2006)). In support of its *res judicata* argument, Defendants include documents from the docket in *Tolliver I* as exhibits to their Opening Brief. Plaintiff asks this Court to "quash" the motion to dismiss and its attached exhibits as "null and void" because they call on this Court to consider facts outside of the complaint. Pl.'s Resp. at 1. However, as previously explained, the Court may take judicial notice of these court filings, and Plaintiff's objection to their consideration is thus without merit.

[76] *LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 191 (Del. 2009) (internal citations omitted).

16

it must demonstrate that "(1) the court making the prior adjudication had jurisdiction, (2) the parties in the present action are either the same parties or in privity with the parties from the prior adjudication, (3) the cause of action must be the same in both cases or the issues decided in the prior action must be the same as those raised in the present case, (4) the issues in the prior action must be decided adversely to the plaintiff's contentions in the instant case, and (5) the prior adjudication must be final."[77]

The second and fourth elements are straightforward and not meaningfully disputed in this case. As to the second element, Denise Tolliver is the plaintiff in both actions, and the parties do not dispute that Delmarva Foundation for Medical Care and Qlarant, defendants in the respective actions, are the same company.[78] Thus, the parties are the same in both actions.[79] As to the fourth element, there is no question that all issues in *Tolliver I* were decided adversely to Plaintiff's contentions, since they were all dismissed by the District Court over the course of the litigation.

Plaintiff appears to contest the first element, implying that the remand for lack of subject matter jurisdiction in *Tolliver II* proves that the District Court also lacked jurisdiction in *Tolliver I*. This argument is without merit. Unlike *Tolliver II*, the Second Amended Complaint in *Tolliver I* raised a federal cause of action under the

---

[77] *Bailey v. City of Wilmington*, 766 A.2d 477, 481 (Del. 2001).

[78] *See* Compl. at 2–3, ¶ 6 ("Employer renaming occurred in 2018. Qlarant wrote, 'Welcome to Qlarant, bringing together the powerful resources of Delmarva Foundation, Health Integrity, Quality Health Strategies, and Quality Health Foundation into one single brand.'"); Def.'s Opening Br. at 7 ("This decision [in *Tolliver I*] was rendered in a prior suit with the same parties—Plaintiff and Qlarant—or their privies.").

[79] This Court has previously held under similar facts that "corporate officers" who "made key decisions in the company, directly involving Plaintiff's conditions of employment" were in privity with the employer for *res judicata* purposes. *Hammer*, 2021 WL 4935019, at *3–4. Thus, even if personal jurisdiction existed over defendants Keller and Forsythe, the *res judicata* analysis in this section would apply with equal force to them.

Americans with Disabilities Act.[80] *Tolliver II* was remanded only after the District Court construed the complaint in this action as raising claims under Delaware law only, rather than under Delaware law and the federal Equal Pay Act.[81]

The third element of *res judicata* is satisfied if the cause of action or the issues decided are the same in both cases. Delaware courts follow the "transactional approach" to *res judicata*.[82] This approach requires a "pragmatic consideration" that takes into account "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."[83] Here, Counts I and II of the Complaint state the same cause of action and arise from the same transaction as Counts I and II of the initial complaint in *Tolliver I*. The purported causes of action are identical, and the factual allegations are very similar. In both actions, Plaintiff asserted in Count I that Qlarant violated the implied covenant of good faith and fair dealing by terminating her employment before the two-year term of grant funding was complete.[84] Likewise, Plaintiff asserted in Count II of both actions that Qlarant violated 19 *Del. C.* § 1108(3) by failing "to provide notice to Plaintiff that she would be deprived of unemployment compensation."[85] Count III of the Complaint, styled "Equal Pay, DDEA and DPDEPA Disability and Retaliation," implicates several different causes of action, but the underlying factual allegations appear to be that Defendants discriminated against Plaintiff on the basis of her disability by failing to make reasonable accommodations and retaliated against her for requesting those accommodations. Insofar as Count III is raising

---

[80] *Tolliver*, 2020 WL 4335521, at *1.
[81] Remand Order (D.I. 6) at 5–6.
[82] *LaPoint*, 970 A.2d at 193.
[83] *Id. (quoting Restatement (Second) of Judgments § 24(2) (1982)).*
[84] Compl. at 5–6 ¶¶ 22–25; Defs.' Opening Br. Ex. C at 6 ¶¶ 21–23.
[85] Compl. at 6 ¶ 28; Defs.' Opening Br. Ex. C at 6 ¶ 26.

disability discrimination and retaliation claims under the DPDEPA and/or the DDEA, these claims address the same issues as the Second Amended Complaint in *Tolliver I.* Thus, with the sole exception of Plaintiff's equal pay claim (which will be addressed on other grounds),[86] Plaintiff's claims in this case all arise from the same transaction as *Tolliver I* for *res judicata* purposes.

The final issue in the *res judicata* analysis is whether the prior adjudication was final. In Delaware, a dismissal with prejudice is generally final for *res judicata* purposes, but a dismissal without prejudice is not.[87] Since Counts I and II were dismissed with prejudice as time-barred in *Tolliver I*, the nearly identical Counts I and II in this action are barred by *res judicata*. Accordingly, the Court will dismiss Counts I and II of the Complaint with prejudice.

Count III is more complicated. As explained previously, the District Court dismissed some of Plaintiff's discrimination and retaliation claims with prejudice, and others without prejudice. With respect to those claims dismissed with prejudice, Plaintiff is barred from relitigating them in this Court. Thus, Plaintiff's claims of disability discrimination with respect to her February 2014 accommodation request and her retaliation claims based on protected activity that occurred in February 2014 and May 2014 will be dismissed with prejudice based on *res judicata*.

---

[86] Based on the conclusion that Plaintiff's equal pay claim is time-barred, *see* Part III.C *infra*, the Court need not address the question of whether bringing it in this subsequent action constitutes impermissible claim-splitting. *See Wilson v. Brown*, 36 A.3d 351, 2012 WL 195393, at *4 (Del. 2012) (TABLE) ("Even if a substantive theory of recovery asserted in a subsequent lawsuit is different from that presented in prior litigation, when the second action is based on the same transaction as the first, the claim has been split and must be dismissed." (quoting *Kossol v. Ashton Condo. Ass'n, Inc.*, 637 A.2d 827, 1994 WL 10861, at *2 (Del. 1994) (TABLE))).

[87] *See Braddock v. Zimmerman*, 906 A.2d 776, 784 (Del. 2006) ("[T]he phrase 'without prejudice' will mean only that the otherwise final judgment does not operate as a *res judicata* bar to preclude a subsequent lawsuit on the same cause of action."); *Kaufman v. Nisky*, 2011 WL 7062500, at *1 (Del. Super. Dec. 20, 2011) ("In Delaware, a dismissal with prejudice is considered an adjudication on the merits. When an action has been dismissed on its merits, the *res judicata* doctrine forecloses a losing party from reasserting for a second time the same cause of action against the same party." (citing *Savage v. Himes,* 2010 WL 2006573, at *3 (Del. Super. May 18, 2010))).

As Defendants concede, application of *res judicata* to those claims dismissed without prejudice would be inappropriate.[88]  The Court thus turns to the issue of administrative exhaustion of those claims.

## B. Failure to Exhaust Administrative Remedies

Under Delaware law, there is a strong presumption that administrative remedies provided for by statute should be exhausted before an action is brought in court.[89]  Plaintiff's discrimination and retaliation claims arise under the DDEA, 19 *Del. C.* §§ 710–720, and the DPDEPA, 19 *Del. C.* §§ 720–728.  The administrative exhaustion requirement for both acts is set out in 19 *Del. C.* § 714, which provides that a "charging party may file a civil action in Superior Court, after exhausting the administrative remedies provided herein and receipt of a Delaware Right to Sue Notice acknowledging same."[90]  19 *Del. C.* § 712(c)(1) requires that "[a]ny person claiming to be aggrieved by a violation of this chapter shall first file a charge of discrimination within 300 days of the alleged unlawful employment practice or its discovery, setting forth a concise statement of facts, in writing, verified and signed by the charging party."

Plaintiff obtained the requisite right to sue notice from the Delaware Department of Labor on March 7, 2018.[91]  However, the District Court in *Tolliver I* "carefully reviewed her EEOC intake questionnaire as well as her charge of discrimination" and concluded that neither "refer to the alleged March and May 2014

---

[88] Defs.' Opening Br. at 6 n.1.

[89] *See Levinson v. Delaware Comp. Rating Bureau, Inc.*, 616 A.2d 1182, 1192 (Del. 1992) ("Given the strong presumption in favor of such exhaustion and in the absence of any compelling argument to the contrary, DCRB should have been required, as a matter of law, to exhaust its administrative remedy.").

[90] 19 *Del. C.* § 714(a); 19 *Del. C.* § 727(a) ("Enforcement of this subchapter [the DPDEPA] shall be in accordance with the procedures for enforcement of rights secured by subchapter II of this chapter [the DDEA].").

[91] Motion to Dismiss Ex. E (Final Determination and Right to Sue Notice).

accommodation requests seeking a transfer to a different workplace."[92] That court further concluded that neither document referred to the March 2014 phone call for which Plaintiff asserted a retaliation claim.[93] As a result, the court *sua sponte* dismissed without prejudice these claims for failure to exhaust administrative remedies.[94]

In response to Defendants' assertion that she has again failed to exhaust her administrative remedies, Plaintiff directs this Court to the right to sue notice issued in March 2018. However, this is the same right to sue notice that the District Court had before it in *Tolliver I*. It does not appear that Plaintiff has taken any further steps to exhaust her administrative remedies with regard to those claims since the District Court's dismissal without prejudice. Moreover, the administrative process to obtain a right to sue notice must be initiated "within 300 days of the alleged unlawful employment practice or its discovery."[95] Thus, it is too late for Plaintiff to complete administrative exhaustion of any claims not raised in her original Charge of Discrimination. Plaintiff's opportunity to exhaust these remedies is thus long passed, and another dismissal without prejudice would be fruitless. Accordingly, the Court dismisses Plaintiff's remaining discrimination and retaliation claims under the DDEA and DPDEPA with prejudice.

### C. Delaware Wage Payment and Collection Act Claim

The only new claim in this action not previously addressed by the District Court is Plaintiff's Count III equal pay claim under the Delaware Wage Payment and Collection Act ("DWPCA"), 19 *Del. C.* § 1101–1115. While it is difficult to tell on the face of the Complaint, in a filing with the District Court, Plaintiff

---

[92] *Tolliver*, 2020 WL 4335521, at *6. For exhaustion of Plaintiff's state law claims, it is the Charge of Discrimination relied on by the Delaware Department of Labor that is relevant.
[93] *Id.* at *8 n.11.
[94] *Id.* at *8.
[95] 19 *Del. C.* § 712(c)(1).

specifically identified 19 *Del. C.* § 1107A as the basis for this claim, which prohibits differential rates of pay based on gender.[96]  Defendants assert that a claim under the DWPCA is subject to the one-year statute of limitations in 10 *Del. C.* § 8111, which provides that "[n]o action for recovery upon a claim for wages, salary, or overtime for work, labor or personal services performed, or for damages . . . shall be brought after the expiration of 1 year from the accruing of the cause of action on which such action is based."  The Third Circuit has implicitly agreed (albeit in a footnote to a per curiam opinion) that one year is the appropriate statute of limitations for claims under the DWPCA.[97]

Plaintiff's response contains no argument as to the applicable statute of limitations.[98]  However, the Delaware Supreme Court has previously held that 10 *Del. C.* § 8110 applies only to actions for compensation for work actually performed, and that actions for damages, backpay, and wrongful termination are governed by the residual three-year limitations period in 10 *Del. C.* § 8106.[99]

Either way, the Court agrees with Defendants that any claim under 19 *Del. C.* § 1107A is time-barred.  Whether a one-year or three-year limitations period applies

---

[96] Remand Order at 4–5.

[97] *See Phifer v. Sevenson Envtl. Servs., Inc.*, 619 Fed. Appx. 153, 157 n.6 (3d Cir. 2015) (per curiam) ("Although the District Court did not explicitly review Phifer's remaining WPCA claim against Sevenson, having reviewed the record, we agree that Phifer could not prevail on that claim. The statute of limitations for bringing such a claim is one year." (citing 10 *Del. C.* § 8111)).

[98] In her Complaint, Plaintiff asserts that the "above facts"—that she disputed federal court jurisdiction over her claims and that removal of her original complaint in *Tolliver I* resulted in dismissal without prejudice—should trigger tolling of the statute of limitations based upon "inherently unknowable injuries, fraudulent concealment, or equitable tolling."  Compl. at 2, ¶ 3 (quoting *In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *5 (Del. Ch. July 17, 1998), *aff'd*, 725 A.2d 441 (Del. 1999) (TABLE)).  However, Plaintiff fails to explain how the case's removal history renders "the facts underlying a claim [] so hidden that a reasonable plaintiff could not timely discover them."  *Dean Witter*, 1998 WL 442456, at *5.

[99] *Goldman v. Braunstein's, Inc.*, 240 A.2d 577, 578 (Del. 1968); *cf. Trader v. Fiat Distributors, Inc.*, 476 F. Supp. 1194, 1208 (D. Del. 1979) (relying on *Goldman* and applying the three-year limitations period to an action brought under 42 U.S.C. § 1981 for back pay based on employment discrimination.).

is not dispositive, since Plaintiff's employment at Qlarant ended over seven years before this action was filed. Plaintiff's equal pay claim under the DWPCA is therefore dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Petitioner's motion for default judgment is **DENIED**. Defendants' motion to dismiss for lack of personal jurisdiction over Forsythe and Keller is **GRANTED**, and Defendants' motion to dismiss for failure to state a claim upon which relief can be granted against Qlarant is **GRANTED.** Accordingly, Plaintiff's claims against the individual defendants are dismissed without prejudice and the claims against Qlarant are dismissed with prejudice.[100]

**IT IS SO ORDERED.**

Noel Eason Primos, Judge

NEP:tls
oc: Prothonotary
cc: M. Denise Tolliver, *Pro Se*, *Via U.S. Mail & Email*
Counsel of Record, *Via File & ServeXpress*

---

[100] *See Branson*, 625 A.2d at 269 ("A dismissal for lack of jurisdiction or improper venue does not preclude a subsequent action in an appropriate forum, whereas a dismissal for failure to state a claim upon which relief can be granted is with prejudice." (quoting *Arrowsmith v. United Press International,* 320 F.2d 219, 221 (2d Cir. 1963))).

23